**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                           )
COURTLAND SAVAGE,                      )
                                                           )
    Plaintiff,                                     )
                                                           )
    v.                                                )   Civil Action No. 19-2983 (ABJ)
                                                           )
U.S. DEPARTMENT OF THE NAVY,    )
                                                           )
    Defendant.                                  )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

On October 3, 2019, Plaintiff Courtland Savage, a former naval officer and student pilot,

brought the instant action alleging that Defendant, the Department of the Navy, had unlawfully

withheld records under the Freedom of Information Act ("FOIA"). *See* Compl. (ECF No. 1).

Back in April 2017, the Navy had removed Plaintiff from his training subsequent to a review by

the Field Naval Aviator Evaluation Board ("FNAEB"). *Id.* ¶ 6. Plaintiff challenged the Board's

review via a congressional inquiry and accused the Board of discriminating against him on the

basis of race. For similar reasons, Plaintiff's colleague filed an EEO complaint against the Navy.

*Id.* Those inquiries were combined and the Navy convened an investigation in April 2018. The

report of that investigation was completed on August 16, 2018. *Id.*

Plaintiff submitted a request under the FOIA for a "copy of the investigating officer's

final report and accompanying endorsements." *Id.* ¶ 7. The Navy released a portion of those

records. After a series of administrative appeals, the Navy has permitted Plaintiff the

opportunity to review the unredacted portions, but has withheld those portions under FOIA

Exemptions 5, 6, 7(C), and Privacy Act Exemption (d)(5).

On June 22, 2020, Plaintiff amended his complaint to include a claim under the Privacy Act.  The Navy now moves for summary judgment as it has produced all portions of the requested records under the FOIA and Privacy Act.  As explained below, and supported by the declaration of Lt. Clayton S. McCarl, III, and also as described in the Navy's *Vaughn* Index, the Navy's withholdings fall squarely within the claimed FOIA and Privacy Act Exemptions. Therefore, summary judgment is appropriate.

## BACKGROUND

Defendant hereby incorporates its Statement of Undisputed Material Facts as well as the declaration of Lt. Clayton S. McCarl, III and the exhibits attached thereto and referenced therein.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.*

### I.    Summary Judgment And The FOIA.

"[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and

appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.  *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Citizens for Responsibility & Ethics in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## II.     Summary Judgment And The Privacy Act.

The Privacy Act, 5 U.S.C. § 552a, "regulates the 'collection, maintenance, use, and dissemination of information' about individuals by federal agencies."  *Wilson v. Libby*, 535 F.3d

697, 707 (D.C. Cir. 2008) (quoting *Doe v. Chao*, 540 U.S. 614, 618 (2004)).  The statute

provides that, if any federal agency maintains a "system of records," it must "upon request by

any individual to gain access to his record or to any information pertaining to him which is

contained in the system, permit him . . . to review the record and have a copy made of all or any

portion thereof in a form comprehensible to him."  5 U.S.C. § 552a(d)(1).  The statute defines a

"system of records" as "a group of any records under the control of any agency from which

information is retrieved by the name of the individual or by some identifying number, symbol, or

other identifying particular assigned to the individual."  *Id.* § 552a(a)(5).

The Privacy Act, however, also permits agencies to exempt certain systems of records

from the requirements of § 552a(d).  *See* 5 U.S.C. § 552a(j)-(k).  When an agency moves for

summary judgment on the basis of a statutory exemption, it "bears the burden of sustaining its

decision to claim an exemption from disclosure."  *Wheeler v. CIA*, 271 F. Supp. 2d 132, 136

(D.D.C. 2003) (citing 5 U.S.C. § 552a(g)(3)(A)).  Much like in the FOIA context, at the

summary judgment stage, "[i]n a Privacy Act case, the Court may rely on agency affidavits or

declarations."  *Jimenez v. Exec. Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 180 (D.D.C.

2011); *accord Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (holding that

"[i]n a suit seeking agency documents—whether under the Privacy Act or FOIA—'[a]t the

summary judgment stage . . . the court may rely on a reasonably detailed affidavit'").

## ARGUMENT

As set forth below, the Navy conducted an adequate search, located all potentially

responsive records, and carefully reviewed all of the material in question and withheld only

information that is properly exempt from release under the FOIA and the Privacy Act.  No

nonexempt segregable information can be released.  The Navy is therefore entitled to summary judgment.

## I.      The Navy Conducted An Adequate Search.

Under the FOIA an agency has a duty to conduct a "reasonable" search for responsive records.  *See, e.g., Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  Although the adequacy of the search is "dependent upon the circumstances of each case," *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990), the agency must show that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Baker & Hostetler LLP*, 473 F.3d at 318 (citing *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))).  In this connection, it is axiomatic that the fundamental question is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see, e.g., Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Here, Plaintiff submitted a request under the FOIA for a "copy of the investigating officer's final report and accompanying endorsements."  Compl. ¶ 7.  Based on this straightforward description, the Navy was able to locate the requested documents without much trouble.  The Commander, Naval Air Forces Pacific, provided the final endorsement on the requested investigation.  Accordingly, the Commander's staff conducted a search of the command legal files, which were organized in a folder by Plaintiff's command name, and were able to successfully locate the responsive investigation with all endorsements and enclosures.

McCarl Decl. ¶ 4.  Thus, the Navy's search is adequate under the FOIA.  *See Steinberg*, 23 F.3d at 551.

## II.        The Navy Properly Withheld Information under the FOIA and Privacy Act.

### a.   Exemption 5.

Plaintiff challenges the Navy's withholding of certain deliberative information covered by FOIA Exemption 5.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

#### i.   *Deliberative Process Privilege.*

"The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The privilege applies to records that are both "predecisional" and "deliberative."  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  As used in the context of the privilege, "predecisional" material is that "generated before the adoption of agency policy."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Material is "deliberative" if it "reflects the give-and-take of the consultative process."  *Id.*  The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Id.*

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and the privilege's "object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath Water*, 532 U.S. at 8-9 (citations omitted); *see also Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("[T]he deliberative process privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decisionmaking would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible.'") (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) (internal quotation marks omitted)).

Here, as detailed in the Navy's *Vaughn* Index, the Navy withheld as deliberative the proposed findings and opinions not accepted into the final report, containing the subjective evaluations of the Investigating Officer presented to the final endorser for review. *See* McCarl Decl. ¶ 10; Exhibit A (*Vaughn* Index). All of the withheld materials were specifically disapproved by the Navy and ordered removed from the investigation. *See* McCarl Decl. ¶ 4, Exhibit B at 2. Accordingly, the Navy considered this information to be "draft" material as it was not approved in the final investigation. *Id.* The Navy determined that the release of this information could have a chilling effect on the frank and free discussion by investigating officers, reviewers, approving authorities, and their staffs. *Id.* ¶ 10.

The withheld information is necessarily predecisional and also reflects the "'give-and-take of the consultative process,'" *McKinley v. FDIC*, 744 F. Supp. 2d, 128, 138 (D.D.C. 2010). Moreover, release of withheld information would harm the Navy's deliberative process by chilling the free and open communications necessary for the military to freely communicate

regarding investigative matters and would "'discourage candid discussion within the agency.'"
*Access Reports*, 926 F.2d at 1195 (citation omitted).  Indeed, the subjective evaluations of the
Investigating Officer presented to the final endorser for review are at the very heart of the
deliberative-process privilege, as disclosing them would stifle candid discussions about matters
at the core of Navy's duty-bound obligation to investigate and address discrimination within its
ranks.  *See Coastal States*, 617 F.2d at 866 (noting that the deliberative-process privilege "covers
recommendations, draft documents, proposals, suggestions, and other subjective documents
which reflect the personal opinions of the writer rather than the policy of the agency").
Accordingly, the Navy properly withheld some material under FOIA Exemption 5.

### b. Exemption 6.

Exemption 6 permits the withholding of "personnel and medical files and similar files"
when the disclosure of such information "would constitute a clearly unwarranted invasion of
personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and
includes "Government records on an individual which can be identified as applying to that
individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed.
Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the
phrase 'similar files' to include all information that applies to a particular individual."); *Gov't
Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

The Supreme Court has found that "[i]ncorporated in the 'clearly unwarranted' language
is the requirement for ... [a] 'balancing of interests between the protection of an individual's
private affairs from unnecessary public scrutiny, and the preservation of the public's right to
governmental information.'"  *Lepelletier*, 164 F.3d at 46 (citing *Dep't of Defense v. FLRA*, 964
F.2d 26, 29 (D.C. Cir. 1992) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).  In

8

determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  *Reporters*, 489 U.S. at 775; *see also Beck*, 997 F.2d at 1492.  Further, "something, even a modest privacy interest, outweighs nothing every time."  *National Ass'n of Retired Fed.  Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

As the Navy asserted Exemption (b)(6) in conjunction with (b)(7)(C), Defendant therefore discusses the Navy's assertion of these exemptions jointly below.  This approach is appropriate because, although the balancing test for (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" and the test for (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in

disclosure under the analysis of both exemptions.  Accordingly, the Navy's justification of the remaining withholdings is discussed below in connection with its assertion of Exemption 7(C).

###    c.   Exemption 7.

Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.3d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  *Mittleman v. Office of Personnel Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing *Pratt*, 673 F.2d at 420 n.32).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  *Keys v. Dep't of Justice,* 830 F.2d 337, 340 (D.C. Cir. 1987) (citing *Pratt*, 673 F.2d at 418).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'"  *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

Here, the Navy satisfies the threshold standard for invoking Exemption 7.  *See Sinsheimer v. Dep't of Homeland Sec.*, 437 F. Supp. 3d 50, 54-55 (D.D.C. 2006) (concluding that investigations of sexual misconduct satisfy the threshold requirement of being carried out for "law enforcement purposes").  As explained by Lt. McCarl, unlawful discrimination under the Navy Equal Opportunity Program Manual is a punitive order for Naval service members. McCarl Decl. ¶ 5.  Accordingly, the full range of administrative and disciplinary actions are available to address substantiated harassment or unlawful discrimination allegations.  *Id.* (noting that, pursuant to Navy policy, such actions include formal counseling, comments in fitness reports and evaluations, non-judicial punishment, courts-martial, and administrative separation). In a similar context, the Court of Appeals for the Tenth Circuit determined that the military investigation "was one compiled for law enforcement purposes, as the investigation centered on determining if illegal racial harassment occurred."  *Ford v. West*, Civ. A. No. 97-1342, 1998 WL 317561, at *2 (10th Cir. June 12, 1998).  As in *Ford*, the investigation here into Plaintiff's allegations of illegal racial discrimination was compiled for law enforcement purposes.  *See Rugiero v. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that the "Court has adopted a per se rule" that applies not only to criminal enforcement actions, but to "records compiled for civil enforcement purposes as well").  Accordingly, the information at issue here readily meets the threshold requirement of Exemption 7.  *See Pratt*, 673 F.2d at 420 n. 32; *Sinsheimer*, 437 F. Supp. 3d at 54-55.

### d.  Exemption 7(C) in conjunction with Exemption 6.

In *Fischer*, because the Court determined that the government properly withheld information under FOIA Exemption 7(C), the Court did "not address defendant's claim that the information was also properly withheld under Exemption 6."  *Fischer v. Dep't of Justice*, 596 F.

11

Supp. 2d 34, 47 n.17 (D.D.C. 2009).  The Court's reasoning applies as well to the information

withheld in this case under these exemptions.  Here, the Navy has identified the following

categories of information withheld under Exemption 6 and 7(C), as detailed in its *Vaughn* Index.

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled

for law enforcement purposes when disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Supreme Court

affirmed the broad scope of Exemption 7(C) in *National Archives and Records Admin. v. Favish*,

541 U.S. 157 (2004).  Accordingly, once the agency has demonstrated that the records were

compiled for law enforcement purposes, the Court must next consider whether the release of

information withheld "could reasonably be expected to constitute an unwarranted invasion of

personal privacy."  5 U.S.C. § 552(b)(7)(C).  This determination necessitates a balancing of the

individual's right to privacy against the public's right of access to information in government

files.  *See, e.g., Reporters Committee*, 489 U.S. at 776-780; *Oguaju v. United States*, 288 F.3d

448 (D.C. Cir. 2002), vacated 124 S.Ct. 1903 (2004), reinstated, 378 F.3d 1115 (D.C. Cir.),

modified, 386 F.3d 273 (D.C. Cir. 2004); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C.

Cir. 1993).  The plaintiff bears the burden of establishing that the "public interest in disclosure is

both significant and compelling in order to overcome legitimate privacy interests."  *Perrone v.*

*FBI*, 908 F. Supp. 24, 26 (D.D.C. 1995) (citing *Senate of Puerto Rico v. Dep't of Justice*, 823

F.2d 574, 588 (D.C. Cir. 1987)).  *Accord SafeCard Services*, 926 F.2d at 1206 (public interest in

disclosure of third party identities is "insubstantial").

Consequently, in order to trigger the balancing of public interests against private

interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a

significant one, an interest more specific than having the information for its own sake," and (2)

"show the information is likely to advance that interest." *Boyd v. Criminal Division of United States Dep't of Justice*, 475 F.3d 381, 366, (D.C. Cir. 2007) (citing *Favish*, 541 U.S. at 172).  It is the "interest of the general public, and not that of the private litigant" that the Court considers in this analysis. *Ditlow v. Schultz*, 517 F.2d 166, 171-72 (D.C. Cir. 1975).

Finally, only where the requester can produce meaningful evidence – "more than a bare suspicion" – which would cause a reasonable person to believe that the government had engaged in impropriety should the Court even consider balancing the privacy interests against the public interest in disclosure. *Favish*, 124 S. Ct. at 1581.  Plaintiff here cannot allege any such impropriety.

Here, after balancing the substantial privacy interests of law enforcement agents and other individuals against the non-existent public interest, the Navy has properly asserted Exemptions 6 and 7(C) to protect the identity of military personnel referenced in the investigation, including witnesses, except for individuals holding the rank of Admiral.

First, releasing their identities and information pertaining to these individuals would place each of these persons in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a law enforcement investigatory file. *See Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 128 (D.D.C. 2007) ("One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties.  Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.") (quoting *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978)); *see also Sinsheimer*, 437 F. Supp. 2d at 56 (finding that "[t]he disclosure of the names of witnesses, plaintiff's co-workers, investigators, and other personnel

13

mentioned in the reports of investigations, who have thus been implicated—directly or indirectly—in these sexual harassment charges, would be extremely invasive of a well-recognized privacy interest.").  Simply put, the military personnel named in the investigation have a substantial interest in avoiding any implication in the racial discrimination charges.

Second, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. *Computer Professionals for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996); *Nation Magazine*, 71 F.3d at 893; *Lesar*, 636 F.2d at 487-88; *Fischer*, 596 F. Supp. 2d at 47-48; *Farese v. Dep't of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987).  Accordingly, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  *SafeCard Services*, 926 F.2d at 1205; *Ray*, 441 F. Supp. 2d at 35 ("Exemption 7(C) recognizes that the stigma of being associated with a law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation . . . .").  The D.C. Circuit has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Services*, 926 F.2d at 1206.

In light of the above, the Navy reasonably concluded that the release of personally identifiable information redacted under Exemptions 6 and 7(C) protects privacy interests generally, reduces the risk of retaliation against cooperating witnesses, and encourages future cooperation with Equal Opportunity investigations.  McCarl Decl. ¶ 10.  Accordingly, the Navy properly withheld this information under the FOIA.

### e. Privacy Act (d)(5).

Exemption (d)(5) of the Privacy Act forbids requesting parties from accessing "any information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5); *Mobley v. CIA*, 924 F. Supp. 2d 24, 60 (D.D.C. 2013). This exemption "speaks of 'information,' a term that embraces facts as easily as it does deliberative processes" and therefore "does not admit of any distinction between" the two and "in no way incorporates civil discovery law." *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987). The exemption "protects documents prepared in anticipation of quasi-judicial administrative hearings" as well as "actions in the district courts." *See id.* at 1188. The exemption also extends to "investigatory documents" the creation of which is "premised on the possibility that prohibited practices will be uncovered, thereby warranting further action," even if no proceedings are in fact initiated. *Gov't Accountability Project v. Office of the Special Counsel*, Civ. A. No. 87-235, 1988 WL 21394, at *4 (D.D.C. Feb. 22, 1988). This provision has been held to be similar to the attorney work-product privilege. *See, e.g., Martin*, 819 F.2d at 1187-89; *see also Blazy v. Tenet*, 979 F. Supp. 10, 24 (D.D.C. 1997) (construing subsection (d)(5) to protect communications between CIA's Office of General Counsel and members of plaintiff's Employee Review Panel while panel was deciding whether to recommend retaining plaintiff).

Here, the Navy withheld the Executive Summary of the investigation under Exemption (d)(5) under the Privacy Act because the investigation, report, and proposed findings were compiled in anticipation of a potential criminal or quasi-judicial administrative hearing based on alleged unlawful discrimination as described in Navy Equal Opportunity Program Manual. Indeed, the Navy expressly noted that "the investigation was convened to determine whether unlawful discrimination occurred against [Plaintiff] or other African-Americans in [his]

15

squadron, not as a simple fact-finding mission[.]"  McCarl Decl. ¶ 7, Exhibit E.  Indeed, if

discrimination had been substantiated, the offending parties may be subject to administrative

action and sanctions.  *See e.g.*, *Blazy*, 979 F. Supp. at 24; *Smiertka v. Treasury*, 447 F. Supp. 221,

227-28 (D.D.C. 1978).  Accordingly, the investigation at issue here meets the threshold for

Exemption (d)(5) to apply as a quasi-judicial forum.  *See Martin*, 819 F.2d at 1188.  And, given

the above, there can be no doubt that the information at issue in the investigation was "compiled

in reasonable anticipation of a civil action or proceeding."  5 U.S.C. § 552a(d)(5).  Thus, the

Navy properly withheld some information under Exemption (d)(5) of the Privacy Act.

**III.    The Navy Released All Reasonably Segregable Information.**

Finally, as demonstrated by partial releases of several records and the Department's

*Vaughn* Index, the Mavy examined and processed all of the records responsive to Plaintiff's

request and determined that no non-exempt information could be reasonably segregated for

production to Plaintiff.  If a responsive record contains information exempt from disclosure, any

"reasonably segregable" nonexempt information must be disclosed.  5 U.S.C. § 552(b).

Nonexempt portions of records need not be disclosed, however, if they are "inextricably

intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d

242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, nonexempt information

has been disclosed, an agency need only show "with 'reasonable specificity'" that the

information it has withheld cannot be further segregated.  *Armstrong v. Exec. Office of the*

*President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d

104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the

obligation to disclose reasonably segregable material," which must be overcome by some

"quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117

(D.C. Cir. 2007).

      Here, in light of the careful withholdings applied to the documents released in part, the

Navy has produced all reasonably segregable information.  McCarl Decl. ¶ 11.  This is

adequately demonstrated by the limited redactions and edits apparent from the released version

of the final report.  *Id.*  Therefore, there is no reasonably segregable information that may be

released that would not reveal exempt information and the Navy is entitled to summary

judgment.

## CONCLUSION

      For the foregoing reasons, Defendant should be granted summary judgment.


Dated: August 6, 2020          Respectfully submitted,

                     MICHAEL R. SHERWIN
                     Acting United States Attorney

                     DANIEL F. VAN HORN, D.C. Bar No. 924092
                     Chief, Civil Division

         By:     /s/   *Christopher C. Hair*
                     CHRISTOPHER C. HAIR, PA Bar No. 306656
                     Assistant United States Attorney
                     555 Fourth Street, N.W.
                     Washington, D.C. 20530
                     (202) 252-2541
                     christopher.hair@usdoj.gov

                     *Counsel for Defendant*