IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COURTLAND SAVAGE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-2983(ABJ) |
| | ) | |
| U.S. DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND IN <u>SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Courtland Savage, a former naval officer and student pilot, respectfully submits this memorandum of points and authorities in support of his response to Defendant Department of the Navy's motion for summary judgment, and files a cross-motion for summary judgment. Summary judgment in favor of Defendant is not warranted, as it has failed to satisfy its obligations in proving the respective withheld documents are exempt under 5 U.S.C. §§ 552(b)(5), (b)(6), and (b)(7), and 5 U.S.C. § 552a(d)(5). Because Defendant has not satisfied these obligations, this Court must grant Plaintiff's motion for summary judgment, and order all respective documents produced.

## **<u>FACTUAL BACKGROUND</u>**

The factual and procedural background set forth in Defendant's Statement of Facts (ECF No. 13-1) are largely undisputed, and incorporated herein by reference, subject to the legal arguments set forth below, and the additional facts contained in Plaintiff's Statement of Facts as well as Plaintiff's First Supplemental Complaint (ECF No. 9-1).

This lawsuit stems from Mr. Savage's exhausted inability to receive a full copy of a report of Equal Opportunity (EO) investigation into his allegations of racial discrimination experienced while a Student Pilot at Naval Striker Fighter Squadron (VFA-106). During his tenure as a student in this unit, Plaintiff and Captain J.A. were the subjects of myriad insensitive and racist jokes and actions by various members of the command, and were targeted for attrition from the program. One example of the discriminatory acts by the command was the formation of a text message communication group consisting solely of Caucasian Instructor Pilots who were also graduates of the United States Naval Academy; the group referred to themselves as the "Pure Bloods." Plaintiff and Captain J.A. were the subjects of many race-based comments by members of the "Pure Bloods." First Supplemental Complaint (ECF No. 9-1) at ¶6.

In April 2017, Plaintiff was removed from the training pipeline after undergoing a subjective review board known as a Field Naval Aviator Evaluation Board ("FNAEB"), on which some of the "Pure Bloods" sat as board members. Plaintiff challenged this board on the basis of racial discrimination via a congressional inquiry in July 2017 and a formal EO complaint in December 2017. Likewise, Captain J.A. also filed an EO complaint. The two complaints were merged, and in April 2018, the Commander, Naval Air Forces (CNAF), Vice Admiral Dewolfe Miller, III, convened an investigation. The report of investigation was completed on August 16, 2018, and submitted to Vice Admiral Miller for final action. *Id.* at ¶7.

On May 15 2019, Mr. Savage received a telephone call from the Judge Advocate's Office staffing the investigation, during which the following was relayed and recorded:

> I know it's been very difficult for you, and I understand your frustration with this entire process. So, again, my apologies, but at this point, we're going to provide you with the investigation. And we can be open about the entire affair. **Also, I just want to tell you that I'm sorry you had to go through everything you went**

> **through, because right up front, we are substantiating that you suffered discrimination at [unclear 00:00:42].**
>
> We believe what you and Captain Ashley [phonetic] alleged, and that will be substantiated. **We're sorry you had to go through that. It's inappropriate that that would be happening in this day and age in our Navy, and that also explains, though, what's been going on behind the [unclear 00:01:02] because everybody who's looking at this has been aghast at what was substantiated and what was found by our investigator.** And in this day and age, nobody should have to go through what you guys went through. It's just inappropriate.
>
> And what has been going on since we last contacted you, when we thought we were primed and ready to go, because of the media attention and the congressional attention that this has gotten, Air Boss owed it to his superiors to reach up and let them know it was coming. So this was pushed all the way up to the Chief of Naval Operations. So you know there's a very interest in this investigation, and that's why we had to hold off, because the investigation was sent up to him so he could personally review the investigation. And he himself actually is going to be directing sweeping after actions for naval aviation as a result of this.
>
> So a lot of what's been going on behind the scenes, since we had four-stars, the highest level of the Navy looking at this and basically trying to say what can we do to keep this from happening again. **You know, it's just a daunting problem, racism in our country, racism within the ranks, but again, we want to attack it and see what we can do to try to make sure that the future pilots and present pilots don't go through what you went through.**
>
> So, anyway, that's just a little background. There are sweeping corrective actions that the Air Boss will be directing, starting with directing administrative actions to be taken against the CO and XO of the VFA-106—or former CO and XO and against the instructor pilots. That will happen at lower echelons. We can't direct what to do. Otherwise, we [unclear 00:02:55], but he's directed that some action be taken.

**Plaintiff's Exhibit 2** at 23-24 (emphasis added). In addition to this phone call, Mr. Savage

received documentation annotating the substantiated findings. *Id.* at 21. Several months later, and

3

just days after questions were fielded by several Admirals at the 2019 annual Tailhook convention surrounding this case, the investigation was *reopened*, and the previously substantiated findings were changed to unsubstantiated. **Plaintiff's Exhibits 2 – 3**.[1]

In the midst of the ever changing findings, Mr. Savage has attempted, through both Naval channels and now this lawsuit, to obtain a copy of the original findings in the investigation. Mr. Savage was permitted the opportunity to review, through counsel, a copy of the initial investigation. This review showed that the initial investigating officer *did* substantiate the allegations of racial discrimination. **Plaintiff's Exhibit 2**.

Notwithstanding the two administrative appeals in this case, Defendant has maintained its withholdings of certain portions of the investigation. On August 6, 2020, Defendant filed a Motion for Summary Judgment (ECF No. 13); Mr. Savage now files this Opposition and Cross-Motion for Summary Judgment.

## ARGUMENT

**I.     STANDARD OF REVIEW**

Summary judgment pursuant to Fed. R. Civ. P. 56 should be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In the [Freedom of Information Act] FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *Conservation Force v. Jewell*, 66 F.Supp.3d 46, 55 (D.D.C. 2014) (citing 5 U.S.C. § 552(a)(4)(B)). "The court must analyze all underlying facts and inferences in the light

---

[1] These appeals are still pending final decision by the Secretary of the Naval.

most favorable to the FOIA requester." *Id.* "Accordingly, summary judgment for an agency is only appropriate if the agency proves that it has 'fully discharged its [FOIA] obligations[.]'" *Id.* (quoting *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C. 1996)).

The agency's "FOIA obligations" include a showing that the withheld documents are exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C.Cir. 1980); *see also Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (for a plaintiff to prevail, there must be a showing that the agency improperly withheld the agency records). The same burden applies to withholdings under the Privacy Act. *Wheeler v. CIA*, 271 F.Supp.2d 132, 136 (D.D.C. 2003) (citing 5 U.S.C. § 552a(g)(3)(A)). The burden to prove the matter is exempted from disclosure remains with the agency. *Id.*; 5 U.S.C. § 552(a)(4)(b); *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429 1433 (D.C.Cir 1992). In determining whether the agency has satisfied its burden to prove proper exemption withholdings, a court may rely on agency declarations, so long as the "declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F.Supp.2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir. 1981)).

The agency must also "provide a detailed description of the information withheld through the submission of a so-called 'Vaughn Index'." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 88 (D.D.C. 2009); *see Vaughn v. Rose*, 484 F.2d 820 (D.C.Cir. 1973). The *Vaughn Index* must "provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlate[ ] those claims with the particular part of a

5

withheld document to which they apply." *Judicial Watch, Inc. v. FDA*, 449 F.2d 141, 146 (D.C.Cir. 2006). This requires the agency to "disclose as much information as possible without thwarting the exemption's purpose," *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir. 1987), and to "include more than a 'broad categorical description[,]' which would not allow a 'reviewing court to engage in a meaningful review of the agency's decision.'" *Conservation Force*, 66 F.Supp.3d at 57 (quoting *Hall v. Dep't of Justice*, 552 F.Supp.2d 23, 27 (D.D.C. 2008)). A mere recitation by the agency of the statutory standards is insufficient. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392-93 (D.C.Cir. 1987); *see also Defenders of Wildlife*, 623 F.Supp.2d at 89 (requiring more than "bare legal conclusions regarding the exemptions relied upon by [the agency] to justify the withholding"); *King*, 830 F.2d at 219 (noting that an agency cannot survive summary judgment by providing statements that are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping" (citation omitted)).

## II. THIS COURT SHOULD DENY SUMMARY JUDGMENT TO DEFENDANT, AS DEFENDANT HAS FAILED TO SATISFY ITS FOIA AND PRIVACY ACT OBLIGATIONS BY PROVING THE WITHHELD DOCUMENTS ARE EXEMPT FROM DISCLOSURE

### A. *Vaughn* Index

As a preliminary matter, Defendant's Motion for Summary Judgment should be denied because the provided *Vaughn* index is insufficient for a proper determination by this Court of the applicability of the cited exemptions. Defendant's one-page *Vaughn* index does nothing more than provide a large range of referenced pages, and a mere recitation of the statutory requirements for invoking the respective exemptions. Per the *King* court, Defendant's *Vaughn* index is insufficient to survive summary judgment, and this Court must rule accordingly.

**B.      5 U.S.C. § 552(b)(5)**

Defendant withheld certain "[f]indings of fact and opinions from the Investigating Officer which were not adopted by the Final Endorser" under 5 U.S.C. § 522(b)(5) ("Exemption 5"). Defendant Exhibit A (ECF No. 13-3 at 6). This exemption protects disclosure of documents under the executive deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). "The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.Supp.2d 1, 10 (D.D.C. 2004). "The deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 f.3D 141, 151 (D.C.Cir. 2006). A document is "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Id.* (inner citation and quotations omitted).

Defendant's claim of this privilege cannot be sustained for two reasons: (1) the recitation and summary of facts do not have any bearing on the deliberations; and (2) there is no foreseeable harm to producing these documents.

        **i.      Recitations and summaries of facts are not privileged**

The deliberative process does not protect documents that are "purely factual, unless the material is so inextricably intertwined in the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations. *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997); *see also Dobyns v. United States*, 123 Fed. Cl. 481, 486 (2015) (where the Court concluded that documents produced or created during the investigation of a

7

particular matter—the alleged improper behavior of DOJ lawyers—were not documents produced during the consideration and adoption of a policy by an agency of the United States, and not subject to the deliberative process privilege); *Conservation Force v. Jewell*, 66 F.Supp.3d 46, 60 (D.D.C. 2014) (holding a document which merely recites factual information will not be protected under the deliberative process privilege). In line with the insufficiency of the *Vaughn* index is Defendant's failure to articulate how these withheld "facts" are so intertwined with any possible deliberative process that they cannot be disclosed. For this reason, this Court should deny Defendant's motion on this exemption.

### ii.     No foreseeable harm exists

Even if this Court finds the privilege does exist, Defendant must also show that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). The deliberative process is designed to protect "debate and candid consideration of alternatives within an agency." *Machado Amadis v. United States Dep't of State*, - - F.3d - -, 2020 WL 4914093, at *4 (D.C. Cir. Aug. 21, 2020) (internal citation omitted). "After all, 'experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances … to the detriment of the deicisonmaking process." *Amadis*, 2020 WL 4914093, at *4 (quoting *Sears, Roebuck & Co.*, 421 U.S.

The inverse has occurred in this case. The reviewing authority, concerned that the racial discrimination within his command would be publicly discovered, *changed* all damning findings, opinion, recommendations, and executive summaries. In this case, the Investigating Officer *was*

8

candid; it was the investigation Convening Authority who then stifled the candidness.[2] It is Plaintiff's intent to show the silencing that is occurring to individuals who dare speak up about the racial inequities occurring within the Navy's fighter pilot community. In this case, it is as though the Investigating Officer *wanted* others to know of his findings; and yet, the Navy, through each level of Admiral overseeing this matter, is the one tempering any candor. If the concerted efforts to conceal this information is not revealed, the Navy–unlike the Air Force, which is only now beginning to truly understand its racial disparities–will remain in a perpetual state of racial discrimination–a state in which the bad actors know their behavior is not only condoned, but will effectively be concealed from any concerned inquirers.

One need look no further than Defendant's own memorandum in support of its motion: "the Navy withheld as deliberative the proposed findings and opinions not accepted into the final report, containing the subjective evaluations of the Investigating Officer presented to the final endorser for review. All of the withheld materials *were specifically disapproved by the Navy and ordered removed from the investigation.*" Defendant's Memorandum of Points and Authorities (ECF No. 13-2) at 7 (emphasis added). Defendant avers that the "Navy determined that the release of this information could have a chilling effect on the frank and free discussion by investigating officers, reviewers, approving authorities, and their staffs." *Id.*

However, the Navy provides no affidavit from the Investigating Officer himself regarding any concern over the release of this information. To the contrary, the Investigating Officer was

---

[2] Any facts and/or opinions in the report that were ordered deleted by the Convening Authority for lack of relevancy is gravely concerning because of this bias on the Convening Authority's part. The purpose of having an independent Investigating Officer conduct an investigation is to have an unbiased, third-party review the documents and cite the facts. The Investigating Officer clearly found such facts/opinions relevant, otherwise such information would not have been included in the report, and therefore, should be produced.

explicit in his findings and executive summary that Mr. Savage (and Capt J.A.) was subject to racial discrimination based on the standard within the applicable OPNAVINST:

> Determining racial discrimination has been most difficult, yet the key to this equal opportunity (EO) case, one man's apparent discrimination is another man's clear conscience. This dichotomy exists in our society, and since our Navy is a direct reflection of that society, it exists in the fleet as well. For example, one person may believe that noose hanging on a wall is copacetic, though to another person, especially African American heritage, he may find the noose to be an expression of lynching slaves from our country's history of slavery, and 100% convinced that it is offensive to his sensibilities.
>
> According to OPNAV Instruction 5354.1G, the standard for meeting racial discrimination is based upon a reasonable person's observation. Combine that with OGC's Race and Color Discrimination QSG that provides real world examples of discrimination lawsuits, and the path begins to clarify. **I found that both Captain Ashley's and Lieutenant Savage's complaints met the reasonable person standard, and were supported by legal precedent and the OGC QSG**.[3]

Indeed, the first Investigating Officer (there were two, as the first one retired prior to completion), noted that the "entire case is pretty toxic," but that he did not want "any of the great Americans involved in [the] complaint to face negative repercussions." **Plaintiff's Exhibit 2** at 4, and **8** at 1. Further, as revealed upon Mr. Savage's review, the final Investigating Officer was willing to provide *all* pertinent facts, to include the fact that some of the emojis used by the members of the "Pure Bloods" were synonymous with a historically derogatory term for African Americans. **Plaintiff's Exhibit 3** at 3. The Investigating Officer was willing to bring all relevant facts to light, both positive and negative, to ensure a full, impartial investigation was conducted. It was the Navy, upon review, who did not want these facts to see the light of day; they were

---

[3] This transcription is not verbatim; Mr. Savage was not provided a physical or electronic copy, and counsel could only take notes of the review. However, it does accurately reflect the words contained in the Report of Command Investigation.

surreptitiously changed so as to invoke the deliberative process privilege. It is the Navy's willingness to change facts, solely to invoke this privilege, which will have a chilling effect on future investigating officers, and not the revelation of the true facts themselves. For this reason, this Court must find that the privilege is inapplicable, and order the documents, in their entirety, to be released to Mr. Savage.

### C.      5 U.S.C. § 552(b)(6)

Mr.  Savage disagrees that all personal identifiable information under U.S.C. § 552(b)(6) relative to the command investigation into his Equal Opportunity Complaint should be exempt from disclosure. The severity of Mr. Savage's allegations of racial bias, and the implications it may have on the VFA-106 training program and the Naval aviator community, establishes a substantial public right to information that clearly outweighs any unidentified and negligible interest in privacy, which may speculatively be violated.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and hold the governors accountable to the governed." *See NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978). The courts have held that this purpose leads to a public interest in transgressions committed by senior government officials. *See Cochran v. United States*, 770 F.2d 949, 956 (11th Cir. 1985); *Stern v. Dep't of Justice*, 737 F.2d 84 (D.C. Cir. 1984); *Lurie v. Dep't of the Army*, 970 F. Sup. 19 (D.D.C. 1997). Courts favor disclosure under the FOIA balancing test when a government official's actions constitute a violation of public trust. *See Tax Reform Research Group v. Internal Revenue Service*, 419 F. Supp. 415, 418 (D.D.C. 1976) (FOIA balancing test weighs "obvious public interest in a full and thorough airing of the serious [government] abuses that did in fact occur"); *Dep't of Air Force v. Rose,* 425 U.S. 352 (1976) (Ordered FOIA disclosure of

records regarding disciplinary proceedings of Air Force cadets for violation of Air Force Honor Code). In sum, there is a strong public interest in monitoring the conduct and actual performance of public officials. *See Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir. 1980).

Here, Mr. Savage's request falls under a significant public interest as it is intended to seek disclosure of two currently relevant issues: racial discrimination and the abuse of authority by public officials. The courts have found that the public "may have an interest in knowing that a government investigation itself is comprehensive, that the report of an investigation released publically is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with an appropriate manner." *See Stern v. FBI,* 737 F.2d 84, 92 (D.C. Cir. 1984). Along this line, the courts have found, for instance, that witness statements made during an Agency investigation are not protected under Exemption 6, when no privacy interest outweighs public interest in disclosure. *See Forston v. Harvey,* 407 F. Supp. 2d 13 (D.D.C. 2005) (AR-15-6 investigation witness statements should be disclosed when witness privacy interest is minimal); *Sims v. C.I.A.*, 642 F.2d 562, 574 (D.C. Cir. 1980).

Like the above, the public interest in releasing an investigation into racial discrimination within the Navy outweighs any potential privacy interest in the investigatory materials sought. Given the public interest in obtaining investigatory materials that explore the potential misconduct and discriminatory behavior of public servants and the lack of discernable privacy interest at stake in the request, the withheld personal information should and must be disclosed.

### D.    5 U.S.C. § 552a(d)(5)

This exemption holds that "nothing in this [Act] shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding." Civil action or proceedings does not cover all administrative proceedings; rather, they are limited to "quasi-

judicial hearings" which are "adversarial, include discovery proceedings, and are subject to the rules of evidence." *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1188 (D.C. Cir. 1987) (internal citation omitted). In other words, this exemption was intended by Congress only for administrative proceedings in which the functions "track those of the civil courts." *Id.* The record need not be prepared by, or at the direction of, an attorney for the exemption to apply. *Smiertka v. Treasury*, 447 F. Supp. 221, 227-28 (D.D.C. 1978), *remanded on other grounds*, 604 F.2d 698 (D.C. Cir. 1979).

The EO investigation conducted in this matter was not for "quasi-judicial" purposes; instead, it was conducted to root out very real allegations of racial discrimination against two separate African-American pilots in VFA-106. The investigation was not designed to pursue any "quasi-judicial hearings" in which an adversarial engagement would occur, complete with discovery by both parties (during which, the investigation would have to be turned over to the respective party seeking it in discovery). It was merely a fact-finding tool to determine whether or not there was institutional racial bias, and whether that racial bias was acted upon by certain Caucasian Pilot Instructors and members of the training command.[4]

Indeed, the appointing order for the investigation is devoid of any mention of any potential "quasi-judicial hearing." It does state that the investigating officer is to recommend appropriate administrative action, but as any attorney in the military knows, there is not one single "administrative" action in the military which is subject to rules of evidence. The only

---

[4] Plaintiff recognizes that OPNAVINST 5354.1G (July 24, 2017) notes that commanders are given full discretion to take disciplinary action upon substantiated allegations of unlawful discrimination, but given the concerted manner in which the Navy has tried to conceal any wrongdoing, the Navy cannot plausibly argue this investigation was conducted for any potential quasi-judicial hearing. The same argument applies for why the FOIA exemption (b)(7) is also inapplicable.

administrative action that allows for some form of "discovery" is a Board of Inquiry, but even that is not subject to rules of evidence.

Not only was a "quasi-judicial hearing," or anticipation of such, lacking in this matter, but the use of the exemption by COMNAVAIRPAC to preclude Mr. Savage's access to the investigation is contrary to Congressional intent. As noted by the *Martin* court:

> If Exemption (d)(5) shielded documents prepared for administrative hearings of any sort, the Privacy Act might indeed become a dead letter. Hearings are the bread and butter of many executive agencies, and documents prepared for those hearings comprise an enormous portion of the information Congress intended to make available to concerned individuals under the Privacy Act.

*Id*. (internal citation omitted) (emphasis added). To this end, the Martin court wrote:

> Quasi-judicial hearings are relatively rare, and the vast majority of agency records will not be associated with them. Moreover, quasi-judicial hearings – adversarial proceedings, subject to the rules of evidence and with opportunity for discovery – are an easily discernible breed.

*Id*. (emphasis added). As amply noted by the appellate court, Congress' intent in enacting this exemption is much narrower than Defendant has interpreted. This exemption was not intended to be used as a blanket shield against access, and it certainly should not be employed as such in this case.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion for summary, grant his cross-motion for summary judgment, and order produced all documents discussed above.

Respectfully submitted,

/s/ *Eric S. Montalvo*
Eric S. Montalvo, DC Bar No. 993206
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C.  20006
Telephone:  202-862-4360
Facsimile:  888-899-6053
emontalvo@fedpractice.com

Attorney for Plaintiff