# Federal Practice Group
### Aggressive ● Innovative ● Global

Carol A. Thompson
Lic: OK**
CThompson@fedpractice.com

January 31, 2020

**<u>VIA ELECTRONIC MAIL ONLY</u>**
Honorable Thomas Modly
Acting Secretary of the Navy

Via:    Christopher Grady
        Admiral, United States Navy
        Commander
        United States Fleet Forces Command

        Ingrid E. Paige
        Lieutenant Commander, United States Navy
        Assistant Fleet Judge Advocate
        United States Fleet Forces Command
        ingrid.e.paige@navy.mil

RE:    Appeal of Findings of Review of Race Discrimination Complaints Against
        CDR Martin L. Weyenberg, USN, and CDR James D. Huddleston, USN

Ref:    (a) OPNAVINST 5354.1 G
       (b) Mr. Savage's ltrs of 22 Oct 19 and 24 Jun 19[1]
       (c) COMNAVAIRLANT 5354 ltr Ser NOlL/306 of 11 Oct 19
       (d) COMNAVAIRLANT 5354 ltr Ser NOlL/307 of 11 Oct 19
       (e) USFF 5354 ltr Ser NO1L/103 of 9 Dec 19

Encl:    (1) POA
        (2) Mr. Savage's FOIA/PA Appeal ltrs of 17 Jan 20 and 20 Jun 19 w/o encls
        (3) Original NAVPERS 5354/2
        (4) Transcript of phone call w/ CDR Keith of 15 May 19
        (5) Transcript of RADM Kelley's comments at Tailhook

1. In accordance with references (a) and (e) and the approved extension through 31 January 2019, and subject to enclosure (1), Mr. Courtland Savage, by and through counsel, respectfully submits this appeal to the now-unsubstantiated findings of racial discrimination by Commander

---

[1] In the interest of brevity, Mr. Savage hereby incorporates his arguments and issues previously raised in these two appeals.

**1750 K Street NW, Suite 900 | Washington, DC  20006**
**Office:  202-862-4360 | Fax: 888-899-6053 | www.FedPractice.com**
**\*\*Practice in DC limited to matters and proceedings before Special Courts - Federal Courts – Agencies\*\***

**SAVAGE PE 2, Page 1 of 28**

SAVAGE – EO APPEAL
January 31, 2020
PAGE 2 OF 5

(CDR) Martin Weyenberg, then Commanding Officer of Strike Fighter Squadron One Zero Six (VFA-106), and CDR James Huddleston, then the training officer at VFA-106, against Mr. Savage. Mr. Savage, an African American, was the target of racial discrimination by Caucasian Instructor Pilots (IPs) at VFA-106. The discrimination bled into the subjective scorings in the various training evolutions, which in turn where used to "justify" his untimely removal from VFA-106 by CDR Weyenberg, and ultimately as an officer in the Navy. This Equal Opportunity (EO) investigation, which initially concluded in July 2018, resulted in substantiated findings of discrimination. However, and most disturbingly, these substantiated findings of racial discrimination have since been changed to unsubstantiated. It is the change in the findings, the reason for which Mr. Savage is still uncertain of, that forms the basis for this appeal.

2. As a prerequisite matter, Mr. Savage's ability to thoroughly and adequately respond to the unsubstantiated findings is significantly hindered as he has yet to receive a full copy of the investigation, despite an active lawsuit brought under the Freedom of Information Act (FOIA) and Privacy Act now pending in the United States District Court for the District of Columbia (Case No. 1-19-cv-02983-ABJ). Encl. (2). Accordingly, Mr. Savage requests a stay of the Secretary of the Navy's final review of this matter until: (1) Mr. Savage receives a full copy of the investigation; or (2) the pending FOIA lawsuit has been litigated to completion.

3. Mr. Savage's need for a full, unredacted copy of the investigation is heightened by the irregular manner in which this EO investigation has been processed. *See* Ref. (b) (letter of 22 Oct 19 which details the reopening of the matter for further investigation by a commander (Rear Admiral (RADM) Kelley) who serves *under* the EO investigation convening authority (Vice Admiral (VADM) Miller)). Given the timing of certain other events related to this this matter, to include the Department of Defense Inspector General's (DoD IG) substantiation in June 2019 of Whistleblower Reprisal against Lieutenant (LT) Steven Shaw after he made a protected communication regarding the *very same racial discrimination* experienced by Mr. Savage, as well as RADM Kelley's comments at the Tailhook convention in September 2019 regarding Navy leadership's frustration with the DoD IG office, it appears that the change from substantiated discrimination to unsubstantiated was done out of retaliation.

4. This concern of retaliation is hardly theoretical. Not only was Mr. Savage initially informed of the substantiated findings via both the original NAVPERS 5354/2 (enclosure (3) at p.4) and a phone call from CDR Keith, [2] VADM Miller's Deputy Staff Judge Advocate (SJA) on 15 May

---

[2] Upon best information and belief, CDR Keith is the individual from VADM Miller's SJA's office who called Mr. Savage; this belief is based on CDR Keith's name appearing on page 4 of the NAVPERS 5354/2, enclosure (3), as the individual who conducted the debrief. However, several individuals were on the call, so it is likely the person who conducted the debrief was another person from the SJA's office, with CDR Keith simply listening to the debrief.

2019, but the change from substantiated to unsubstantiated occurred *after* the DoD IG's findings of whistle blower reprisal, and around the same time as RADM Kelley's comments at the Tailhook convention.

5. Of these corroborating facts, the most compelling is CDR Keith's phone call on 15 May 2019, just days after VADM Miller authored his endorsement on this investigation, and one month before the DoD IG investigation substantiated findings of whistleblower retaliation by CDR Weyenberg (the same individual who is the subject of this EO investigation), during which CDR Keith profusely apologizes for the discrimination Mr. Savage suffered:

> I know it's been very difficult for you, and I understand your frustration with this entire process.  So, again, my apologies, but at this point, we're going to provide you with the investigation.  And we can be open about the entire affair.  **Also, I just want to tell you that I'm sorry you had to go through everything you went through, because right up front, we are substantiating that you suffered discrimination at [unclear 00:00:42].**
>
> We believe what you and Captain Ashley [phonetic] alleged, and that will be substantiated.  **We're sorry you had to go through that.  It's inappropriate that that would be happening in this day and age in our Navy, and that also explains, though, what's been going on behind the [unclear 00:01:02] because everybody who's looking at this has been aghast at what was substantiated and what was found by our investigator.**  And in this day and age, nobody should have to go through what you guys went through.  It's just inappropriate.
>
> And what has been going on since we last contacted you, when we thought we were primed and ready to go, because of the media attention and the congressional attention that this has gotten, Air Boss owed it to his superiors to reach up and let them know it was coming.  So this was pushed all the way up to the Chief of Naval Operations.  So you know there's a very interest in this investigation, and that's why we had to hold off, because the investigation was sent up to him so he could personally review the investigation.  And he himself actually is going to be directing sweeping after actions for naval aviation as a result of this.

Regardless, this is the statement of the individual conducting the telephonic debrief to Mr. Savage.

So a lot of what's been going on behind the scenes, since we had four-stars, the highest level of the Navy looking at this and basically trying to say what can we do to keep this from happening again.  **You know, it's just a daunting problem, racism in our country, racism within the ranks, but again, we want to attack it and see what we can do to try to make sure that the future pilots and present pilots don't go through what you went through.**

So, anyway, that's just a little background.  There are sweeping corrective actions that the Air Boss will be directing, starting with directing administrative actions to be taken against the CO and XO of the VFA-106—or former CO and XO and against the instructor pilots.  That will happen at lower echelons.  We can't direct what to do.  Otherwise, we [unclear 00:02:55], but he's directed that some action be taken.

Encl. (3) (emphasis added).

6. Between VADM Miller (who helped formulate RADM Kelley's comments at Tailhook) and RADM Kelley, those "substantiated" findings discussed in the preceding paragraph were changed from substantiated to unsubstantiated. This chain of reversals not only undermines the entire purpose behind having a neutral, unbiased investigating officer look at the facts and make a decision independent of the chain of command, but is a prime example of a recent complaint brought forth by the DoD IG to Congress: that the military's commanders are not rectifying wrongs identified in certain investigations.[3] Indeed, it appears they are perpetuating them.

7. The same command (under CDR Weyenberg) that allowed and fostered the racial discrimination is the same command that had the subjective authority to disenroll Mr. Savage from flight training via a Field Naval Aviator Evaluation Board (FNAEB). An independent investigator recognized that discriminatory practices were occurring. When the investigation was turned back over to the command for endorsement, the command again turned a blind eye and began undoing the factual findings of the investigator. As addressed at the Tailhook convention, senior Navy leadership are now taking an active role to not only stymie Sailors and Marines from using the DoD IG as a potential source of relief, but to "perfect" their own internal investigations to ensure they (the leaders) come out unscathed. Such actions by senior Navy leadership amount to abdication of their roles as leaders. As a last right of appeal, Mr. Savage now implores the Secretary – serving as civilian oversight, not beholden to the uniform – to end this vicious cycle of abuse of power by the senior leaders in the Navy, and return the previously substantiated

---

[3] https://www.defenseone.com/politics/2020/01/dod-punishing-whistleblowers-more-often-and-impunity-ig-says/162735/ (last visited 29 January 2020).

SAVAGE – EO APPEAL
January 31, 2020
PAGE 5 OF 5

findings of discrimination to their original form, followed by appropriate and attendant administrative relief.

8. Point of contact for this matter is the undersigned at 202-808-3134 or cthompson@fedpractice.com. On behalf of Mr. Savage, I thank you for your time and consideration of this significant issue.

Respectfully,

Carol Thompson

1750 K Street NW, Suite 900 | Washington, DC  20006
Office:  202-862-4360 | Fax: 888-899-6053 | www.

SAVAGE PE 2, Page 5 of 28



**The Federal
Practice Group**
WORLDWIDE SERVICE

Eric S. Montalvo
License:  DC, NJ, PA
emontalvo@fedpractice.com

**<u>VIA ELECTRONIC MAIL ONLY</u>**

## POWER OF ATTORNEY

I, Courtland Savage, residing at the following address:

**333 Oak Wood Dr.
Mount Holly, NC 28120**

Do hereby designate the Federal Practice Group to serve as my attorneys. I authorize all branches,
agencies, appointees, officials, and employees of the federal government of the United States of
America, as well as of the governments of any State, County, or Municipality in the United States,
to fully communicate with and release to my herein designated attorneys any and all information
related to me as deemed necessary. This also constitutes a waiver of my rights under the
Privacy Act, 5 U.S.C. § 552a. This Power of Attorney will remain in effect until withdrawn
by me and/or my designated attorneys.

_____                         24 MAY 2019
Courtland Savage                                          Date

SAVAGE PE 2 Page 6 of 28

FPG

## Federal Practice Group
### Aggressive ● Innovative ● Global

Carol A. Thompson
Lic: OK**
CThompson@fedpractice.com

January 17, 2020

**VIA CERTIFIED MAIL ONLY**
Office of the Judge Advocate General (Code 14)
"Freedom of Information Appeal"
1322 Patterson Ave., S.E.
Suite 3000
Washington, D.C. 20374-5066

RE: **Freedom of Information and Privacy Act Appeal in File Number 2019-005892, Lieutenant Courtland Savage**

To whom it may concern:

This is an appeal pursuant to 5 U.S.C. §§ 552 and 552a, concerning the refusal to entirely disclose records requested on behalf of Lieutenant ("LT") Courtland Savage, a client of The Federal Practice Group, and a former officer within the United States Department of the Navy ("DON") who was the victim of certain racial discrimination. Lieutenant Savage has been denied full access to the Equal Opportunity ("EO") investigation into the discrimination he suffered; the DON's refusal to disclose the requested items violates the Federal Freedom of Information Act ("FOIA"), the Privacy Act ("PA"), and the DON FOIA Program.

### Statement of Facts

In January 2016, LT Savage commenced training as a student pilot in VFA-106. During his tenure as a student in this unit, LT Savage and another African-American pilot, Captain ("Capt") Jason Ashley, were the subjects of myriad insensitive and racist jokes and actions by various members of the command, and were targeted for attrition from the program. One example of the discriminatory acts by the command was the formation of a text message communication group consisting solely of Caucasian instructor pilots who were also graduates of the United States Naval Academy; the group referred to themselves as the "Pure Bloods." Both LT Savage and Capt Ashley were the subjects of many race-based comments by members of the "Pure Bloods."

In April 2017, LT Savage was removed from the training pipeline after undergoing a subjective review board known as a Field Naval Aviator Evaluation Board ("FNAEB"). Lieutenant Savage challenged the board on the basis of racial discrimination via a congressional inquiry in July 2017 and a formal EO complaint in December 2017. Likewise, Capt Ashley also filed an EO complaint. The two complaints were merged, and in April 2018, the Commander, Naval Air Forces/Naval Air Force, U.S. Pacific Fleet ("CNAF" or "COMNAVAIRPAC"), Vice Admiral Dewolfe Miller, III, convened an investigation. The report of investigation was completed on August 16, 2018, and submitted to Vice Admiral Miller for final action.

**1750 K Street NW, Suite 900 | Washington, DC 20006**
**Office: 202-862-4360 | Fax: 888-899-6053 | www.FedPractice.com**
**\*\*Practice in DC limited to matters and proceedings before Special Courts - Federal Courts – Agencies\*\***

SAVAGE PE 2, Page 7 of 28
Enclosure (12), Page 7 of 28

SAVAGE – FOIA/PA APPEAL
January 17, 2020
PAGE 2 OF 5

Upon conclusion of the report of investigation, neither LT Savage nor Capt Ashley was provided a copy. On April 15, 2019, after receiving no further correspondence on the matter, LT Savage submitted a request under the FOIA for a copy of the investigating officer's final report and accompanying endorsements. His submission cited to OPNAVINST 5354.1G, which requires that any request for the production also be reviewed under the PA.

On May 13, 2019, almost one month after receiving LT Savage's request, Vice Admiral Miller authored his final endorsement. This endorsement approved only select findings and recommendations of the investigating officer (which included a finding that LT Savage's FNAEB *was* improperly influenced by the racial slurs of the "Pure Bloods"); a majority of the findings and recommendations were then either deleted or amended.[1]

On May 15, 2019, two days after the final endorsement was authored, LT Savage was provided a heavily redacted, partial denial of his request. The redactions and withholdings were made under 5 U.S.C. §§ 522(b)(3), (5), and (6), and included many of the pre-amended and "deleted" findings and recommendations, as well as the investigating officer's "Executive Summary" of the report.

Lieutenant Savage timely appealed the unlawful withholdings to this office, asserting that the COMNAVAIRPAC had failed to exercise sound and reasonable decision making in withholding documents under 5 U.S.C. §§ 522(b)(5) (deliberative process) and (6), and that the exemptions cited were either inapplicable or could be narrowly tailored so as not to exclude whole pages, *e.g.* the full redaction of the "Executive Summary" portion of the report of investigation. His appeal was denied on July 29, 2019.

On October 3, 2019, LT Savage filed a lawsuit in the United States District Court for the District of Columbia, Case No. 1-19-cv-02983-ABJ, against the DON for the unlawful withholdings. On November 5, 2019, shortly before the deadline for the DON's answer to the complaint, LT Savage received correspondence notifying him that this office was amending its decision of July 29, 2019, and was remanding the matter back to COMNAVAIRPAC for review under the PA. This correspondence noted that the initial request should have been processed under the PA, in accordance with OPNAVINST 5354.1G, Ch. 4, Paragraph 3.f(8), to which the deliberative process privilege *does not* apply. Encl. (2) (referencing *Savada v. United States Dep't of Def.*, 755 F. Supp. 6, 9 (D.D.C. 1991) ("[A]lthough the deliberative process privilege exempts these documents from release under FOIA, the privilege does not exempt the document from release under the Privacy Act.")). In other words, it appears that the matter was remanded by this office for the sole purpose of ensuring LT Savage's access to the documents, and not as a means to further restrict it. The DON's filing deadline in the lawsuit was then extended in order to reprocess the request under the PA.

---

[1] The EO investigation was reopened in September 2019, after the substantiation of Whistleblower retaliation by the Department of Defense Inspector General in a related case. Substantiated findings in this case have since been unsubstantiated, and an appeal to the Secretary of the Navy is ongoing.

SAVAGE – FOIA/PA APPEAL
January 17, 2020
PAGE 3 OF 5

On December 6, 2019, COMNAVFORPAC provided a second production of the responsive documents. The redactions in the second production were identical to the redactions in the first, save the use of the exemptions: the redactions/withholdings were now being made under 5 U.S.C. § 552a(d)(5) in lieu of 5 U.S.C. § 552(b)(5).[2] Lieutenant Savage is now timely appealing the recent withholdings, which mirror the original withholdings. The lawsuit has been stayed pending resolution of this current appeal.

**Authority and Argument**

Lieutenant Savage hereby incorporates his previous arguments set forth in his appeal of June 20, 2019, to the extent COMNAVAIRPAC reasserts withholdings under 5 U.S.C. §§ 552(b)(5)-(6), and makes the following additional arguments.

1. **The second production is in violation of 5 U.S.C. § 552a(t).**

An agency cannot use an exemption under either the FOIA or the PA to withhold a document that would otherwise be releasable under the other. 5 U.S.C. § 552a(t); *see also Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) ("[A]ccess to records under [FOIA and PA] is available without regard to exemptions under the other."); *Shapiro v. DEA*, 762 F.2d 611, 612 (7th Cir. 1985) ("Congress intends that the courts construe the Privacy Act and the Freedom of Information Act separately and independently so that exemption from disclosure under the Privacy Act does not exempt disclosure under the Freedom of Information Act, and *vice versa*."); *Espinoza v. DOJ*, 20 F. Supp. 3d 232, 244 (D.D.C. 2014) (finding that "the Privacy Act specifically exempts from its nondisclosure provisions documents that are otherwise required to be disclosed under the FOIA"); *Menchu v. HHS*, 965 F. Supp. 2d 1238, 1246-47 (D. Or. 2013) (finding that "the underlying goal of the legislature to allow individuals broad access to their own records[] supports the conclusion that § 552a(t) requires disclosure of the records sought when allowed under either the [FOIA] or the Privacy Act," especially in light of the fact that the plaintiff was requesting information about himself and not about a third party); *Blazy v. Tenet*, 979 F. Supp. 10, 16 (D.D.C. 1997) (quoting subsection (t)(2) and stating that "[d]ocument requests therefore must be analyzed under both Acts"), *summary affirmance granted*, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998); *Bogan v. FBI*, No. 04-C-532-C, 2005 WL 1367214, at *6 (W.D. Wis. June 7, 2005) (explaining that if records are requested under both FOIA and PA, the requestor can gain access to those records *by showing that they were accessible under either statute*).

---

[2] A few of the redactions previously made under 5 U.S.C. § 552(b)(5) now reflect that they are being redacted under 5 U.S.C. § 552a(d)(5) and 5 U.S.C. § 552(b)–the redactions no longer specify that it is under subsection (5), rather just (b) at large; however, the majority of the redactions previously made under 5 U.S.C. § 552(b)(5) now reflect exemption under 5 U.S.C. § 552a(d)(5) outright.

SAVAGE – FOIA/PA APPEAL
January 17, 2020
PAGE 4 OF 5

Here, the agency has essentially "swapped" the FOIA exemption (b)(5) for the PA exemption (d)(5) after LT Savage both appealed and filed a lawsuit regarding the inapplicability of 5 U.S.C. § 552(b)(5) to the respective withholdings. Such action by COMNAVAIRPAC is in direct violation of both 5 U.S.C. 552a(t) and the intent of Congress that the FOIA and the PA serve as rights of access, and not shields to deny access. To be clear, and as discussed in the previous appeal, the deliberative process privilege does not apply to the withheld/redacted material. Similarly, but under a different analysis, 5 U.S.C. § 552a(d)(5) does not apply to the withheld/redacted materials (as discussed in the next section). Because the matter is releasable under at least one, if not both, of the statutes, the documents must be released. For this reason alone, all documents currently redacted and withheld should be produced in their entirety.

## 2. 5 U.S.C. § 552a(d)(5) is inapplicable to the withheld information, as the investigation was not conducted in anticipation of a "quasi-judicial hearing."

This exemption holds that "nothing in this [Act] shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding." Civil action or proceedings does not cover *all* administrative proceedings; rather, they are limited to "quasi-judicial hearings" which are "adversarial, include discovery proceedings, and are subject to the rules of evidence." *Martin*, 819 F.2d at 1188 (internal citation omitted). In other words, this exemption was intended by Congress only for administrative proceedings in which the functions "track those of the civil courts." *Id.* The record need not be prepared by, or at the direction of, an attorney for the exemption to apply. *Smiertka v. Treasury*, 447 F. Supp. 221, 227-28 (D.D.C. 1978), *remanded on other grounds*, 604 F.2d 698 (D.C. Cir. 1979).

The EO investigation conducted in this matter was not for "quasi-judicial" purposes; instead, it was conducted to root out very real allegations of racial discrimination against two separate African-American pilots in VFA-106. The investigation was not designed to pursue any "quasi-judicial hearings" in which an adversarial engagement would occur, complete with discovery by both parties (during which, the investigation would have to be turned over to the respective party seeking it in discovery). It was merely a fact-finding tool to determine whether or not there was institutional racial bias, and whether that racial bias was acted upon by certain Caucasian Pilot Instructors and members of the training command.

Indeed, the appointing order for the investigation is devoid of any mention of any potential "quasi-judicial hearing." It does state that the investigating officer is to recommend appropriate administrative action, but as any attorney in the military knows, there is not *one single* "administrative" action in the military which is subject to rules of evidence. The only administrative action that allows for some form of "discovery" is a Board of Inquiry, but even that is not subject to rules of evidence.

Not only was a "quasi-judicial hearing," or anticipation of such, lacking in this matter, but the use of the exemption by COMNAVAIRPAC to preclude LT Savage's access to the investigation is contrary to Congressional intent. As noted by the *Martin* court:

SAVAGE – FOIA/PA APPEAL
January 17, 2020
PAGE 5 OF 5

> If Exemption (d)(5) shielded documents prepared for administrative hearings *of any sort*, the Privacy Act might indeed become a dead letter. Hearings are the bread and butter of many executive agencies, and documents prepared for those hearings comprise an enormous portion of the information Congress intended to make available to concerned individuals under the Privacy Act.

*Id.* (internal citation omitted) (emphasis added). To this end, the *Martin* court wrote:

> Quasi-judicial hearings are *relatively rare*, and the *vast majority* of agency records will not be associated with them. Moreover, quasi-judicial hearings – adversarial proceedings, subject to the rules of evidence and with opportunity for discovery – are an *easily discernible breed*.

*Id.* (emphasis added). As amply noted by the appellate court, Congress' intent in enacting this exemption is much more narrow than COMNAVAIRPAC has interpreted. This exemption was not intended to be used as a blanket shield against access, and it certainly should not be employed as such in this case.

## <u>Conclusion</u>

For the aforementioned reasons, the DON should disclose all responsive records pursuant to LT Savage's FOIA request without redaction. If you have any questions or concerns, please contact me at 202-808-3134 or by email: cthompson@fedpractice.com. Thank you in advance for your review of this matter.

Respectfully,

*Carol Thompson*

Carol Thompson

Enclosures:
1. First Appeal
2. Denial of Appeal
3. Notice of Remand
4. Second Production

SAVAGE PE 2 Page 21 of 28



Carol A. Thompson
Lic: OK
cthompson@fedpractice.com

June 20, 2019

**<u>VIA CERTIFIED MAIL ONLY</u>**

Office of the Judge Advocate General (Code 14)
"Freedom of Information Act Appeal"
1322 Patterson Ave., S.E.
Suite 3000
Washington, D.C. 20374-5066

RE:    **FREEDOM OF INFORMATION ACT APPEAL
File Number 2019-005892, Lieutenant Courtland Savage**

Dear Office of the Judge Advocate General:

This is an appeal pursuant to 5 U.S.C. § 522, concerning the refusal to entirely disclose records requested on behalf of Lieutenant ("LT") Courtland Savage, a client of The Federal Practice Group, and a former trainee and Replacement Pilot with the United States Department of the Navy ("DON"). *See* Enclosure ("Encl.") (1). The DON's refusal to disclose the requested items violates the Federal Freedom of Information Act ("FOIA" or "Act") as amended, and the DON FOIA Program.

The records requested relate to the DON's command investigation final report and all endorsements for LT Savage's Equal Opportunity complaint at VFA-106, wherein he challenged his removal from the training pipeline by a Field Naval Aviator Evaluation Board ("FNAEB"), on or around April 18, 2017, on the basis of racial discrimination. At the request of Commander Naval Air Force Atlantic ("CNAL"), the Commander, Naval Air Forces ("CNAF") Chief of Staff, convened an investigation to determine the facts and circumstances of a series of unresolved Equal Opportunity, Inspector General, Article 1150, and Congressional Complaints submitted by other pilots, including LT Savage.

On or around April 15, 2019, LT Savage sought a copy of the command investigation and final report. In response, on or around May 17, 2019, DON produced a heavily-redacted, partial denial of the FOIA request citing numerous exemptions. LT Savage now appeals the FOIA response and partial disclosure, as the exemptions cited in the response are either inapplicable or improperly applied. An expedited review of this appeal is kindly requested to allow LT Savage a timely response to the adverse actions received as a result of the investigation report.

---

## Introduction

In accordance with OPNAVINST 5354.1G, Ch. 4, Paragraph 3.f(8), LT Savage submitted a FOIA request to the DON FIA office online in accordance with the requirements of the DON FOIA Program, SECBAVUBST 5720.42F, 32 C.F.R. § 701.8, and 5 U.S.C. § 552. (Encl. 2). Specifically, the submission requested, "a copy of the investigating officer's final report and all endorsements for the Equal Opportunity case submitted by LT Courtland Savage on 18 December 2017, which was finalized by VADM DeWolfe Miller on 12 April 2019." *Id.*

The FOIA request included a reasonable description of the records sought in order to assist DON in conducting a timely search, and to enable the DON to locate the record with a reasonable amount of effort in accordance with 32 C.F.R. § 701.8(c)(1).

## Agency Response

On or around May 17, 2019, the DON replied in writing, informing the undersigned that the DON received and accepted LT Savage's request for processing on April 15, 2019. (Encl. 3). The search for responsive documents revealed a command investigation into the Equal Opportunity Complaint with all applicable endorsements and enclosures, which were maintained by the Commander, Naval Air Force, U.S. Pacific Fleet. During DON's review of the requested documents, DON discovered that some of the information contained therein would need to be withheld under 5 U.S.C. § 552(b)(3), (b)(5), and (b)(6). *Id.*

## Withholding, Excising, and Reasonably Segregable Information

The DON failed to exercise sound and reasonable decision making in its denial; many of the exemptions cited are inapplicable and the remaining exemptions can be very narrowly tailored so as not to exclude whole pages, i.e. the full redaction of the "Executive Summary" cited in the Command Investigation dated August 16, 2018. The DON's withholding and excision of information was not in accordance with the DON FOIA policies under 32 C.F.R. § 701.8(k)(1), (k)(2), and (k)(3).

The policies and procedures governing withholding and exclusions under the Act specify that records may only be withheld if they qualify for one or more of the nine FOIA exemptions or three exclusions and it is determined that a foreseeable harm to an interest protected by those exemptions would result if the information is released. The Act authorizes DON activities to release all "reasonably segregable information" when the meaning of these portions is not distorted by the deletion of the denied portions, and when it reasonably can be assumed that a skillful and knowledgeable person could not reasonably reconstruct excised information.

LT Savage maintains below that certain information withheld does not fall within one of the exemptions that would allow for redaction, and certain information that does fall within one of the limited exemptions can be redacted in a way that provides more information but still adequately protects the identity of individuals interviewed in the investigation.

June 20, 2019
PAGE 3 OF 6

### 1.  The Investigative Officer Report Was Not Part Of A Deliberative Process Under U.S.C. § 552 (b)(5).

The Investigative Officer ("IO") report does not fall within the "deliberative process" exemption, and therefore must be disclosed. As part of the command investigation release, the DON referenced the "deliberative process" exemption often cited under the exception listed in 5 U.S.C. § 552 (b)(5): inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. Courts have held that "pre-decisional documents" (e.g. memorandums discussing why a particular action is to be taken) are generally exempt. *See F.T.C. v. Warner Comm., Inc*., 742 F.2d 1156, 1161 (9th Cir. 1984); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151-153 (1975).  However, Courts have also distinguished between "materials reflecting deliberative or policy-making process . . . and purely factual, investigative matters." *EPA v. Mink*, 410 U.S. 73, 89 (1973), superseded on other grounds by Pub. L. No. 93-502, 88 Stat. 1561 (1974); *see also Dobyns v. United States*, 123 Fed. Cl. 481, 486 (2015) (where the Court concluded that documents produced or created during the investigation of a particular matter—the alleged improper behavior of DOJ lawyers—were not documents produced during the consideration and adoption of a policy by an agency of the United States, and not subject to the deliberative process privilege).

Here, the DON is withholding portions of the IO report,[1] as well as a string of findings of fact and opinions listed therein, claiming they are subject to the deliberative process privilege. (Encl. 4, pp. 2-3). Yet, the IO report was not produced during the consideration and adoption of a policy by an agency of the United States. Rather, the IO report and the findings and opinions listed therein were specifically created during the investigation into a particular matter; more specifically, LT Savage's removal from the pipeline via a FNAEB and the alleged racial bias underlying said removal. In line with *Dobyns* and *Mink*, the deliberative process privilege should not apply to such documents.

Assuming *arguendo*, the deliberative privilege does exist, it protects only the recommendations, drafts, and suggestions made to the promulgation of policy. *See Dobyns*, 123 Fed. Cl. at 486; *see also Conservation Force v. Jewell*, 66 F.Supp.3d 46, 60 (D.D.C. 2014) (holding a document which merely recites factual information will not be protected under the deliberative process privilege); and *Mink*, 410 U.S. at 91 (finding where factual portions of a document are "severable without compromising the private remainder of the document[ ]," then the factual portions must be disclosed, even though the deliberative material remains protected). Again, in line with these cases, the facts memorialized or contained in the IO report must be

---

[1] The DON has acted improperly in withholding the entirety of the Executive Summary. Where an Agency establishes the applicability of an exemption, "it must nonetheless disclose all reasonably segregable, nonexempt potions of the requested record." *See Assassination Archives & Research Ctr. v. CIA,* 334 F.3d 55, 58 (D.C. Cir. 2003). Here, the DON failed to produce any portion of the Executive Summary in violation of FOIA principles and requirements.

produced. The selection of the facts themselves for purpose of a report that will form the final action is not part of the deliberative process; the deliberative process is the further discussion of the facts that have been compiled, and how those facts might play into the final decision. Indeed, the purpose of the deliberative process is to allow the free flow of thoughts and ideas, and should those thoughts and ideas differ from the final action, then concern exists if those differing thoughts are produced to the public. However, DON does not appear to claim that any differing thoughts should be withheld; rather, the DON is attempting to withhold facts reiterated in the Executive Summary, as well as the listed findings of fact merely reciting factual information. *See Mink*, 410 U.S. at 89-91 (the privilege does not protect "purely factual investigative matters" or "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context"). Such information does not fall within the scope of the deliberative process. Further, to the extent any of the IO's withheld opinions or recommendations on the facts[2] are the same as the final action, then they should also be produced.

Finally, even if the DON believes the deliberative process privilege has been met here, the needs of LT Savage outweigh interests of the government in preventing disclosure of the information. *See Cobell v. Norton*, 213, F.R.D. 1, *5 (D.D.C. 2003) (discussing the five-factor test derived from *Schreiber v. Society for Savings Bancorp, Inc.*, 11 F.3d 217 (D.C. Cir. 1993). Applying this test to LT Savage's request – (1) the relevance of the evidence sought, (2) the availability of such evidence, (3) the seriousness of the litigation, and (4) the role of the government in the litigation, all outweigh (5) the possibility of future timidity by government employees. First, the IO report is highly relevant to LT Savage's inquiry into whether racial bias impacted his removal from pilot training. Second, the evidence withheld from the IO report is readily available and can be easily produced within days of this request. Third, the complaints raised by LT Savage, and other pilots, are particularly serious in the fact that the documents sought may shed light on systemic racism within DON's VFA-106 program. These factors alone significantly outweigh the potential shielding of internal government deliberations relative to such complaints, and such disclosure will "serve the public's interest in honest, effective government." *Cobell*, 213 F.R.D. at *4.

## 2. Personally Identifiable Information Withheld Under U.S.C. § 552 (b)(6) Should Be Released

LT Savage disagrees that all personal identifiable information under U.S.C. § 552(b)(6) relative to the command investigation into his Equal Opportunity Complaint should be exempt

---

[2] Any facts and/or opinions in the IO report ordered deleted by the final reviewing authority for lack of relevancy is utmost concerning because of the reviewing authority's potential bias. The purpose of having an IO conduct an investigation is to have an unbiased, third-party review the documents and cite the facts. The IO clearly found such facts/opinions relevant, otherwise such information would not have been included in the report, and therefore, should be produced.

June 20, 2019
PAGE 5 OF 6

from disclosure. The severity of LT Savage's allegations of racial bias, and the implications it may have on the VFA-106 training program, establishes a substantial public right to information that clearly outweighs any unidentified and negligible interest in privacy, which may speculatively be violated.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and hold the governors accountable to the governed." *See NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978). The courts have held that this purpose leads to a public interest in transgressions committed by senior government officials. *See Cochran v. United States*, 770 F.2d 949, 956 (11th Cir. 1985); Stern v. Dep't of Justice, 737 F.2d 84 (D.C. Cir. 1984); *Lurie v. Dep't of the Army*, 970 F. Sup. 19 (D.D.C. 1997). Courts favor disclosure under the FOIA balancing test when a government official's actions constitute a violation of public trust. *See Tax Reform Research Group v. Internal Revenue Service*, 419 F. Supp. 415, 418 (D.D.C. 1976) (FOIA balancing test weighs "obvious public interest in a full and thorough airing of the serious [government] abuses that did in fact occur"); *Dep't of Air Force v. Rose,* 425 U.S. 352 (1976) (Ordered FOIA disclosure of records regarding disciplinary proceedings of Air Force cadets for violation of Air Force Honor Code). In sum, there is a strong public interest in monitoring the conduct and actual performance of public officials. *See Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir. 1980).

Here, LT Savage's request falls under a significant public interest as it is intended to seek disclosure of transgressions, violations of Equal Employment Opportunity Law, and the abuse of authority by public officials. It also seeks information as to whether public servants carried out duties in a law abiding manner. The courts have found that the public "may have an interest in knowing that a government investigation itself is comprehensive, that the report of an investigation released publically is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with an appropriate manner." *See Stern v. FBI,* 737 F.2d 84, 92 (D.C. Cir. 1984). Along this line, the courts have found, for instance, that witness statements made during an Agency investigation are not protected under Exemption 6, when no privacy interest outweighs public interest in disclosure. *See Forston v. Harvey,* 407 F. Supp. 2d 13 (AR-15-6 investigation witness statements should be disclosures when witness privacy interest is minimal); *Sims v. C.I.A.*, 642 F.2d 562, 574 (D.C. Cir. 1980).

Like the above, the public interest in releasing personal information withheld from LT Savage's request outweighs any potential privacy interest in the investigatory materials sought. Given the public interest in obtaining investigatory and other materials that explore the potential misconduct and discriminatory behavior of public servants and the lack of discernable privacy interest at stake in the request, the withheld personal information should and must be disclosed.

For the aforementioned reasons, the DON should disclose records pursuant to LT Savage's FOIA request without redaction.

June 20, 2019
PAGE 6 OF 6

     If you have any questions or concerns, please contact me at 202-808-3134 or by email: cthompson@fedpractice.com. Thank you in advance for your review of this matter.

                       Best regards,

                       */s/ Carol Thompson*
                       Carol Thompson

Enclosures:
1. Power of Attorney
2. LT Savage FOIA Request
3. DON FOIA Response Letter
4. FOIA Package

**1750 K St.., NW, Suite 900 | Washington, DC  20006**
**Office:  202-862-4360 | Fax: 888-899-6053 |** www.fedpractice.com

SAVAGE PE 2, Page 17 of 28

## NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT
## NAVPERS 5354/2 (Rev. 08-2017)          Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

### PRIVACY ACT STATEMENT

**AUTHORITY:** 10 U.S.C. 5013 (g).

**PRINCIPAL PURPOSE:** Filing of allegations of unlawful discrimination and harassment based on race, color, religion, sex (including gender identity) or sexual orientation, national origin, and incidents of sexual harassment against military personnel.  For Equal Employment Opportunity reports against civilian employees, see Equal Employment Opportunity Commission Management Directive 715.

**ROUTINE USES:** Information provided on this form may be used: (a) as a data source for report information, statistics, reports, and analysis; (b) to respond to requests from appropriate outside individuals or agencies (e.g. Members of Congress; the White House) regarding the status of a report; (c) to adjudicate the report or appeal; or (d) any other properly established routine use.  May use addendum as necessary.

**DISCLOSURE:** Disclosure is voluntary; however, failure to fully complete all portions of this form may result in rejection of the report on the basis of inadequate data to assess report.

PROTECT PRIVACY: Protect individual privacy (both complainant and alleged offender) throughout the process. (SECNAVINST 5211.5 Series)

### PART I. COMPLAINANT INFORMATION & RESOURCES

| 1. Complainant Name *(Full First Name, MI, Last Name)*: | 2. Rank/Rate: | 3. DoD ID Number: | |
|---|---|---|---|
| COURTLAND A. SAVAGE | LT/O3 | 1374374261 | |

| 4. Command Name/UIC: | 5 Race/Ethnic Group: | 6. Sex: | 7. Date: |
|---|---|---|---|
| VFA-106/N09679 | Black or African American | Male | 28 Mar 18 |

8. Report Processing Options:

(a) Informal Resolution System (IRS).  *(see OPNAVINST 5354.1 Series or OPNAVINST 5300.13 Series)*

(b) U.S. Navy Sexual Harassment Prevention and Equal Opportunity Advice Line.
Call Toll Free: (800) 253-0931, DSN 882-2507, COMM (901) 874-2507.  Line manned Monday - Friday, 0830-1630 Central Standard Time.
E-Mail: Mill_NavyEOAdvice@Navy.mil.

(c) Authorized command or local resources.  The following are available *(insert local name, organization, and phone number)*

| | | | |
|---|---|---|---|
| Equal Employment Opportunity (EEO) Official: | Local Name | Organization | Phone Number |
| Fleet Family Support Center (FFSC): | Local Name | Organization | Phone Number |
| Command Climate Specialist (CCS): | Local Name | Organization | Phone Number |
| Health Treatment Facilities (HTF): | Local Name | Organization | Phone Number |
| Chaplain: | Local Name | Organization | Phone Number |
| Legal: | Local Name | Organization | Phone Number |

(d) NAVREGS 1151 Request mast with the Commanding Officer (CO)/Officer-in-Charge (OIC).
Your right to communicate with the CO/OIC in a proper manner, time, and place shall not be denied or restricted.
Such requests shall be acted upon promptly and forwarded without delay.
*(Attach local procedures as a separate document and additional information if necessary.)*

(e) Communications with Inspector Generals.  Any person whose chain of command does not take effective action on reports or who does not feel comfortable filing reports locally or in person can lodge reports (anonymously if desired) via one or more of the available hot lines:
Naval Inspector General:  Toll free (800) 522-3451; DSN 288-6743, COMM (202) 433-6743.
Marine Corps Inspector General:  DSN 224-1349, COMM (703) 614-1349

| Local TYCOM, ISIC, or local Commander's hot lines: | TYCOM Hot line | ISIC Hot line | CO Hot line |
|---|---|---|---|

(f) NAVREGS 1155.  A Service member may always communicate individually with members of Congress.

(g) UCMJ Article 138.  A Service member who believes himself or herself wronged by his or her CO may file a report as provided in JAGMAN Chapter III.

(h) NAVREGS 1150.  A Service member who believes himself or herself wronged by his or her superior in rank or command (to include enlisted personnel) other than his or her CO may file a report as provided in JAGMAN Chapter III.

(i) Anonymous Report Process.  *(see OPNAVINST 5354.1 Series or OPNAVINST 5300.13 Series)*

Complainant was advised of counseling/support services and provided a copy of this form.

| 9. Representative Receiving Report: | 10. Rank/Rate: | 11. Position: | |
|---|---|---|---|
| AZCS JOSEPH SOUZA | AZCS/E-8 | VFA-106 CMEO | |

| 12. Command Name/UIC: | 13. Representative Signature: | 14. Date: |
|---|---|---|
| VFA-106/N09679 | SOUZA JOSEPH PAUL.1173093922  *Digitally signed by SOUZA.JOSEPH.PAUL.1173093922  Date: 2018.04.02 12:58.44 -04'00'* | 02 Apr 18 |

| 15. Complainant Name: | 16. Complainant Signature: | 17. Date: |
|---|---|---|
| COURTLAND A. SAVAGE | *(signature)* | 02 Apr 18 |

# NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT
**NAVPERS 5354/2 (Rev. 08-2017)**     Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

## PART II.  ALLEGED OFFENDER INFORMATION & NATURE OF REPORT

Filing Deadline:  I understand that a formal report shall be made within 60 calendar days of the offending incident, or in the case of a series of incidents, within 60 calendar days of the most recent incident.  This EO filing deadline does not affect alternative remedies that might apply.

| 1. Alleged Offender Name *(Full First Name, MI, Last Name)*: | 2. Rank/Rate: | 3. Command Name/UIC: |
|---|---|---|
| MARTIN L. WEYENBERG | CDR/O5 | VFA-106/N09679 |

4. Location of Incident:   Complainant & Alleged Offender On Duty

5. Relationship to Complainant :   Chain of Command

6. Race/Ethnic Group *(obtain from FLTMPS)*:   White

7. Sex:   Male

8. NATURE OF REPORT: *(State, in as much detail as possible, the basis for your report.  Describe the behaviors / conduct under objection, date(s) of any occurrence, names of involved parties, witnesses, others to or from whom previous reports may have been made or received, other evidence available, and any additional information which may be helpful in resolving your report.  Attach additional sheets as needed.  Check the blocks for all that apply.  If a Service Member, uniformed witness, or first responder perceives subsequent retaliation related to the report of sexual harassment, they may seek support from a Command Climate Specialist (CCS).  Individuals can also report to the Inspector General (IG), a Military Criminal Investigative Organization (MCIO) or to command for investigation, or other appropriate command action.)*

☒ <u>Discrimination</u>          ☐ <u>Harassment</u>                    ☐ <u>Sexual Harassment</u>

☒ Race          ☐ National Origin          ☐ Religion          ☐ Crude Offensive Behavior

☐ Color          ☐ Sexual Orientation          ☐ Sex *(including gender identity)*          ☐ Unwanted Sexual Attention

☐ Sexual Coercion

SEE ATTACHED MESSAGE FROM LT SAVAGE TO HONORABLE MARK WARNER DATED 23JUL17.

9.  Report Type:

☒ Formal                    ☐ Informal

**Acknowledgment of Receipt of Report** *(by Representative identified in Part I, Number 9)*:
I acknowledge receipt of this unlawful discrimination/harassment/sexual harassment report.
I understand that I have one calendar day *(24 hours)* to refer the report to the appropriate authority and to inform that authority of any interim action that is taken.

| 10. Representative Receiving Report: | 11. Rank/Rate: | 12. Position: | |
|---|---|---|---|
| AZCS JOSEPH SOUZA | AZCS/E-8 | VFA-106 CMEO | |
| 13. Command Name/UIC: | 14. Representative Signature: | | 15. Date: |
| VFA-106/N09679 | SOUZA JOSEPH PAUL 1173093922  *Digitally signed by SOUZA.JOSEPH.PAUL.1173093922  Date: 2018.04.02 12:59:02 -04'00'* | | 02 Apr 18 |

16.  Complainant Acknowledgment/Signature.  *(By signing, Complainant affirms the above has been read, is understood, and is correct.)*

| (a)  Name: | (b)  Signature: | (c)  Date: |
|---|---|---|
| COURTLAND A. SAVAGE | *Courtland Savage* | 02 APR 18 |

# NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT
**NAVPERS 5354/2 (Rev. 08-2017)** Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

## PART III. FORMAL REPORT PROCESSING/COMMAND ACTIONS

INTERIM FEEDBACK/ASSISTANCE TO COMPLAINANT. Take particular care to avoid re-victimizing complainants (and witnesses). Keep the complainant and alleged offender apprised of the status of the investigation (including any deadline extensions). Provide supplemental counseling/support assistance/referral as warranted. Ensure that all involved are aware of the retaliation plan of action and know that retaliation against the complainant will not be tolerated. (*Recommend keeping a record of such feedback/assistance. Attach record to the report form.*)

RESOLUTION TIME STANDARDS/REPORTING. Resolution of case should be completed no later than 20 days from investigation commencement. Resolution includes: Completion of investigation, determination of validity of report, adjudication at non-judicial punishment or courts-martial, initiation of other appropriate action, notification to accused, and notification of complainant and submission of a close-out. If time standards cannot be met, continuation messages every 14 days through case resolution is mandatory for reports of sexual harassment. Explain the reason(s) for delay. Send all messages UNCLASSIFIED.

DOCUMENT COMMAND ACTION. The complainant's command is responsible for ensuring Parts I and II are complete and providing this to the alleged offender's Commander, Commanding Officer or Officer-in-charge (hereafter referred to as Commander) (as applicable). Upon completion of Part III, with the exception of continuation(s) and close-out Date Time Groups, Parts I through III are required to be forwarded within 72 hours (3 days) and Parts IV and V upon final disposition of report, via appropriate Echelon II CCS, CMEO program manager, and EO program manager, to Mill_NavyEOAdvice@Navy.mil via an e-mail that is not encrypted. Command records should permit reviewers to clearly ascertain/assess decisions reached. Make appropriate entries in individual personnel records, if applicable. Make any statistical reports required by the chain of command. Retain this completed form and investigation onboard at least two years, at which time the entire command investigation shall be sent to the Office of the Judge Advocate General (Code 15) Investigations Branch. Provide a copy of completed form to complainant as authorized under Freedom of Information Act (FOIA) and governing directives.

1. Command Climate Specialist (CCS) Consultation: OPNAVINST 5300.XX and OPNAVINST 5354.1G requires consultation of a CCS in all informal, formal, and anonymous sexual harassment, unlawful discrimination and harassment reports.

| (a) Command Climate Specialist Name: | (b) Rank/Rate: | (c) Command Name/UIC: |
|---|---|---|
| ETC TIFFANY SILKWORTH-MALLORY<br>AMCS STEPFANEY CHASE | ETC/E7<br>AM/E8 | COMNAVAIRLANT<br>COMNAVAIRPAC |
| (d) Command Climate Specialist Phone Number: | (e) Command Climate Specialist E-mail Address: | |
| (757)836-4501    (619)545-1835 (CNAP) | TIFFANY.SILKWORTHMAL@NAVY.MIL | |

I understand that I must provide all appropriate voice reports and required message reports *(e.g., OPREP)* per OPNAVINST F3100.6 series within established time lines. I further understand I must initiate an appropriate investigation or ensure that one is being conducted (e.g., by NCIS) within three calendar days (72 hours) and notify complainant the same day of investigation commencement. I must ensure a retaliation plan is in place and acknowledged by all involved parties. I also understand that I am required to consult a CCS prior to making a determination of this report, as well as, consult with a judge advocate for all allegations of sexual harassment and for legal sufficiency review.

Transfer of Report: When the complainant and alleged offender are assigned to different commands or services *(when all parties are not assigned to a joint military environment)*, the report shall be processed by the command or service of the alleged offender.

2. Commander Directing Investigation:

| (a) Name: CNAF ASSUMED INVESTIGATION<br>10JAN18 (Jeffrey J. Czerewko, CAPT)<br>KEVIN McLaughlin | (b) Rank/Rate:<br>CAPT | (c) Command Name/UIC: COMNAVAIRPAC/57025<br>CSFWL/ 09103 |
|---|---|---|
| (d) Contact Information: 619-545-4390<br>757 433-9273 | (e) Signature:<br>(illegible) | (f) Date: 10JAN18<br>6 APR 18 |

3. Date Time Group (DTG) of OPREP Messages *(Attach a copy of all messages to this form.)*

| (a) Initial DTG: 051920Z APR 18 | (b) Close-Out DTG: |
|---|---|

4. Investigating Officer.

| (a) Name and Contact Information:<br>CAPT WILLIAM S. BUTLER | (b) Date Convened:<br>10JAN18 |
|---|---|

5. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

| (a) Name:<br>COURTLAND A. SAVAGE | (b) Signature:<br>(signature) | (c) Date:<br>02 APR 18 |
|---|---|---|

6. Alleged Offender Acknowledgment/Signature. *(By signing, Alleged Offender affirms the above has been read and is understood.)*

| (a) DoD ID Number: 1115978183 | | |
|---|---|---|
| (b) Name:<br>MARTIN L. WEYENBERG | (c) Signature:<br>(signature) | (d) Date: 4/9/18 |

# NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT
**NAVPERS 5354/2 (Rev. 08-2017)**   Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

## PART IV. FORMAL NOTIFICATION REVIEW

1. Notification of Action Taken to Resolve Report. *(To concur within 20 calendar days of receipt of report.)*

(a) Report was completed on:        (b) Report was found to be:

  13JUL18                        SUBSTANTIATED

(c) Based on the following findings:

  SEE REDACTED COPIES RECEIVED VIA FOIA PROCESS

  MBR debriefed on outcome of report on ~~16MAY19~~ by CDR Keith, CNAF DEPUTY JAG
                    15MAY19

2. Right to review by higher authority (via an appeal): I acknowledge notice of my right to submit a statement concerning the investigative findings and command action taken, and to request review of those findings and actions by the Echelon II Commander. Any statement and, or request must be submitted within 7 days of acknowledgment.

(a) Echelon II Command:  USFF        (b) Echelon II CCS/EO Program Manager Contact Information:

3. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

☑ I intend to submit a statement/appeal.              ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| COURTLAND A. SAVAGE | *Courtland Savage* | 24 June 19 | 03JUL19 |

4. Alleged Offender Acknowledgment/Signature. *(By signing, Alleged Offender affirms the above has been read and is understood.)*

☐ I intend to submit a statement/appeal.              ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| MARTIN L. WEYENBERG | | | |

## PART V. FORMAL APPEAL

1. First Appeal Results:

☐ CONCUR                                ☐ DO NOT CONCUR

| (a) Name of Echelon II Reviewing Authority (Commander/Designee): | (b) Rank/Rate: | (c) Command Name/UIC: |
|---|---|---|
| | | |

| (d) Contact Information: | (e) Signature: | (f) Date: |
|---|---|---|
| | | |

2. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

☐ I intend to submit a statement/appeal.              ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| COURTLAND A. SAVAGE | | | |

3. Alleged Offender Acknowledgment/Signature. *(By signing, Alleged Offender affirms the above has been read and is understood.)*

☐ I intend to submit a statement/appeal.              ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| MARTIN L. WEYENBERG | | | |

**NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT**
**NAVPERS 5354/2 (Rev. 08-2017)**          Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

### PART V.  FORMAL APPEAL (continued)

4. SECNAV - Final Appeal Results *(action that been taken to resolve report by reviewing authority)*:

☐ CONCUR                              ☐ DO NOT CONCUR

| (a) Name of SECNAV Reviewing Authority: | (b) Rank/Rate: | (c) Command Name/UIC: | |
|---|---|---|---|
| (d) Contact Information: | (e) Signature: | | (f) Date: |

5. Complainant Acknowledgment/Signature.  *(By signing, Complainant affirms the above has been read and is understood.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|
| COURTLAND A. SAVAGE | | |

6. Alleged Offender Acknowledgment/Signature.  *(By signing, Alleged Offender affirms the above has been read and is understood.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|
| MARTIN L. WEYENBERG | | |

### PART VI.  FORMAL REPORT FOLLOW-UP

1. Complainant Follow-Up Survey  *(Commanders shall conduct a follow-up debrief with the Complainant 30-45 days after the final action.  Command follow-up will include a determination of Complainant satisfaction with the effectiveness of corrective action, timeliness, present command climate, and a review to ensure retaliation did not occur.)*:

(a) Were you subjected to any form of retaliation because of your report?

(b) Rate your level of satisfaction with the processing of your report.

(c) Rate your level of satisfaction with the resolution of your report.

(d) What could have prevented this incident?

2. Complainant Follow-Up Comments:

3. Complainant Acknowledgment/Signature.  *(By signing, Complainant affirms the above has been read and is understood.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|
| COURTLAND A. SAVAGE | | |

4. Commander Follow-Up Notes.  *(Indicate dates/nature of any actions prompted by Complainant debrief.  Attach additional sheets as necessary.)*

5. Commander Acknowledgment/Signature.  *(By signing, Commanding Officer affirms the above is correct and report process is complete.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|

Transcript of Audio Recording Entitled "2019-5-15 Conversation Record EO Results"

**ATTENDEE:**  The commander, he explained we just can't get out in front of our clients and discussing [unclear 00:00:10] decision.  I know it's been very difficult for you, and I understand your frustration with this entire process.  So, again, my apologies, but at this point, we're going to provide you with the investigation.  And we can be open about the entire affair.
Also, I just want to tell you that I'm sorry you had to go through everything you went through, because right up front, we are substantiating that you suffered discrimination at [unclear 00:00:42].

We believe what you and Captain Ashley [phonetic] alleged, and that will be substantiated.  We're sorry you had to go through that.  It's inappropriate that that would be happening in this day and age in our Navy, and that also explains, though, what's been going on behind the [unclear 00:01:02] because everybody who's looking at this has been aghast at what was substantiated and what was found by our investigator.  And in this day and age, nobody should have to go through what you guys went through.  It's just inappropriate.

And what has been going on since we last contacted you, when we thought we were primed and ready to go, because of the media attention and the congressional attention that this has gotten, Air Boss owed it to his superiors to reach up and let them know it was coming.  So this was pushed all the way up to the Chief of Naval Operations.  So you know there's a very interest in this investigation, and that's why we had to hold off, because the investigation was sent up to him so he could personally review the investigation.  And he himself actually is going to be directing sweeping after actions for naval aviation as a result of this.

So a lot of what's been going on behind the scenes, since we had four-stars, the highest level of the Navy looking at this and basically trying to say what can we do to keep this from happening again.  You know, it's just a daunting problem, racism in our country, racism within the ranks, but again, we want to attack it and see what we can do to try to make sure that the future pilots and present pilots don't go through what you went through.

So, anyway, that's just a little background.  There are sweeping corrective actions that the Air Boss will be directing, starting with directing administrative actions to be taken against the CO and XO of the VFA-106—or former CO and XO and against the instructor pilots.  That will happen at lower echelons.  We can't direct what to do.  Otherwise, we [unclear 00:02:55], but he's directed that some action be taken.

The Air Boss is directing Chief of Naval Air Training to formalize the call sign process and create regulate standards across the board for the assignment of call signs.  Every squadron in the Navy is now going to be required to have the XO formally sign of on the assignment of all call signs, and the call signs must be based on written criteria and obviously should not be racially, gender, or any other manner discriminatory.

VFA-106 is going to receive targeted social media and equal opportunity training for the entire unit, but beyond that, we're going beyond that squadron.  And that's one of the things we found is that while, you know, you and Captain Ashley were the named complainants, you're not the only people who suffered this discrimination.  We have at least five pilots who also had racially discriminatory call signs.  So we are hiring—Naval Aviation is going to hire an expert in unconscious bias and stereotype threat.  Every CXO, PTO, and sitting commander in the Navy is going to have to go through this Fortune 500-level unconscious bias and stereotype threat training.

As part of that—and, again, Commander in Chief alluded to this yesterday.  It's totally up to you.  I mean, you might not want to have anything to do with this anymore, but the Air Boss is going to want to invite your assistance in developing that training, because obviously this has been triggered by your complaints.  And what we're trying to do is just trying to keep what you went through from happening again, if that's possible, and hopefully, it is.

Beyond that, CNO and Air Boss flew to Washington, D.C., 2 weeks ago.  He had a sit-down with the CNO, and the conversation was about this investigation.  CNO is directing an assessment  of inclusion and belonging in all of Naval Aviation.  The plan is to hire an outside entity to come in and drill down and do an across-the-board assessment of inclusion in Naval Aviation.  Do our African American aviators—do they feel like they belong?  If they don't, why?  And try to come up with a plan to create a task force to attack that.  That's another thing that we're—we're developing that plan, but I believe the Air Boss is going to want to invite you to assist.  And, again, you don't have to answer that at this point.  I mean, that's something—that's one of the reasons he wanted to talk to you.

And, again, I'm sorry about the plan of not wanting to provide you with the investigation until we talk to you, but that there's two good reasons for that.  The one is that once the investigation has been delivered to you and Captain Ashley, they're now releasable to the press.  Air Boss did want to have a chance to talk to you before all of this goes public, but I understand it's been too long.  And there's no reason to wait anymore.  That's why we're going to give you the investigation now.

And then, finally, as far as the findings go, again, Air Boss found that racial discrimination took place.  He did not find that Admiral Lindsey himself, who made the [unclear 00:06:17] decision, that his decision was racially discriminatory or that it was based upon any kind of racial bias, and you'll see that in the investigation.

So, anyway, that's a quick summary.  That's a lot of information, and I just want to know what—you probably have some questions.  You're going to have more questions.  We're here to answer them for you once you get the investigation, but do you have any questions for us right now?

**LT COURTLAND SAVAGE:**  At this time, not right now.  I just want to take it all in and just kind of look at the investigation paper, and I'll reach out back to you if I have any questions.

**ATTENDEE:**  Okay.  I got it, and another thing, as you mull this over—and again, we're all just brainstorming at this point about how we're going to move forward.  I mean, there's specific directions.  We already have identified an expert who we're going to do the unconscious bias training, but we did see the CBS piece recently about your nonprofit, Flying for the Culture, and one thing we were thinking about is if you were willing to work for us, if there's some way we can partner with that program, because I thought that was a very moving piece, and it seems like a fantastic idea.  But, again, these are not things that are legal until we create the task force.  These are just notions that we have as we develop and move forward.

So, anyway, I'm glad that, you know, we can finally talk about this.  We're at your disposal, if you have any questions, and if you don't have any questions right now, we're going to—we're going to forward that via email, a PDF—oh, sorry.  One more thing.  You'll notice that when you get the report, because of the Privacy Act, you're going to see a lot of redactions.  We can't name, you know, the subjects of the investigation.  You'll see your name in your copy.

Also, when the Air Boss does his review of the investigation, he approves or disapproves different findings.  So that means he disapproves, get redacted, so you'll notice that when you see the investigation.  That's also that when this goes public, you have to protect the privacy of all involved.

**LT COURTLAND SAVAGE:**  Okay.

**ATTENDEE:**  So you'll see that when you get the investigation report.

So if there's no further questions, we'll just get you that report.

**LT COURTLAND SAVAGE:**  All right.  I do have one question.  Who is your point of contact?

**ATTENDEE:**  Oh, point of contact for the investigation will remain Commander Key [phonetic].

**LT COURTLAND SAVAGE:**  Okay, got it.  Well, I'll just take this all in and contact Commander Key with any questions I may have in the future.

**ATTENDEE:**  Okay.  You should have my phone number on the bottom of all my emails.  That's my direct line.

**LT COURTLAND SAVAGE:**  Okay.  Yes, sir.  I do have it.

**ATTENDEE:**  Okay, perfect.  Okay.  So, anyway, we'll get that to you probably within the next few minutes.  Okay.  So you'll have it this morning.  All right.  Well, thank you very much, Mr. Savage.

**LT COURTLAND SAVAGE:**  All right.  Thank you.

**ATTENDEE:**  Have a great day.

**LT COURTLAND SAVAGE:**  Bye-bye.

Transcript of Flag Panel Video Excerpt
2019 Tailhook Convention
September 6, 2019
(Full video available at:
https://livestream.com/wab/tailhook2019/videos/195959742)

**00:02: (CDR Joel Caponigro)** Good afternoon, I'm, uh, Commander Joel
Caponigro, call sign "Furious," Ops O at VFA-106 in Oceana.  I have a
question here that, uh, took some input to do, so I had to write it
down. Um, what would you say to an entire generation of future CO's
and current CO's, uh, JO's and Department Heads in the room who are
watching the IG process used as a weapon for individuals that don't
like their boss.  In other words, why would you choose to stay in the
Navy after watching anyone with protected communication completely
wreak havoc on the safety process, while the O-5 leadership that's
trying to do the right thing takes the fall for doing it.  The
perception that upper levels of leadership are not supporting at their
subordinates in hopes that it just doesn't affect their careers is out
there, and that's, they're not receiving support from the upper
levels.  Additionally, what efforts are being made to go after the
important issues of good or-, good order and discipline, and to ensure
that our O-5 leadership currently in command is supported to the
fullest extent possible.

**00:56:** Applause from the audience

**01:05: (RADM Roy Kelley)** Delicate question.  Thank you much for it.
So-

**01:08: (CDR Joel Caponigro)** I'm not a delicate person (laughs).

**01:10: (RADM Roy Kelley)** A cou-, ya, a couple of things that, uh, we
can, we can talk about here.  Obviously when it comes to, uh, the, the
IG process, let, I want to make sure that everybody understands that,
that is an independent organization.  So, you know, if, if somebody in
here says, uh, you know hey we're, we're concerned about leadership
and where they're going with the IG, there is, uh, those are two
different things completely.  Okay, so, if we're talking about an IG
that's happened, that is exclusive of the people you see up here.
Okay?  Independent organization.  Does its own investigations, and uh,
we, we have no connection, we have no, uh, uh, nothing that we can go
back to change what their opinion is, or what their, their results
are.  Okay? So start with that.  Now specifics on, on the cases that
you're referencing, uh, obviously we're not gonna to dive into those.
But, uh, I can tell ya, that, uh, we are, we are concerned about
things that happened as a result of an IG, or somebody abuses the
system; as uh, as you describe, using IG as a weapon.  And, uh, those
engagements with senior leadership to the IG are happening.  Just to
make sure they understand our concerns that we, we see happen; and to,
uh, to try to see what they can do to put prevention things in place
so that people aren't given the opportunity to abuse the system. So,
the case that you're referencing, we're obviously not gonna talk the
specifics to, but I do want make sure you understand that, that
leadership is, uh, engaged on it, uh, with the IG, but also,

leadership is, uh, in the middle of the process.  So, what you're
describing is not done.  Uh, the, uh, the results, uh, will continue
to be acted upon, and, uh, those will be resolved here in the near
future.

**02:57: (CDR Joel Caponigro)** Yet it still takes down good people before
decisions are made.

**03:00: (RADM Roy Kelley)** And, and…

**03:01: (VADM DeWolfe Miller)** No argument

**03:02: (RADM Roy Kelley)** And, and, you know, there's, there's gonna be
some that, that, uh, will look at it that way for sure, and uh, I, I
can't argue your point.  What I will say is that there's, uh, um,
investigations that happened, and the information in the
investigations, we, uh, we have to protect, but at the same time,
understand that anytime that we're involved in a situation like this,
uh, anything you do, any actions you take can be viewed differently
than you might have i-, indicated, or mi-, uh, the way that you might
have approached it.  So, you know, when, whenever we're, uh, we're
given the responsibilities to take action for, uh, an investigation,
or to follow-up, you have to understand that every individual is given
their rights; and every opportunities if they want to engage with
senior leadership outside organizations.  Uh, and, and, we have to
protect that.  The other side of this too is we have to make sure if
we're, we're, uh, tasked with doing anything in re-, in regards to
that particular investigation, we gotta make sure we do it absolutely
perfectly clean.  I'll leave it at that.

**04:04: (CDR Joel Caponigro)** Yes sir. Thank you.